UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Raymond Harold Kimble, III

~versus~

Parish of Jefferson;
- State of Louisiana
- Jefferson Parish Sheriffs Office
- 24th Judicial Public Defenders Office
- 24th Judicial District Attorneys Office
- Louisiana Public Defender Board
- Baton Rouge Police Department
- Parish of East Baton Rouge
- Louisiana Supreme Court
- Correct Health
- Joseph P. Lopinto, III
- C. Silbernagel
- B. Bordelon
- Lindsay L. Truhe
- Raymond S. Steib, JR.
- Jane Doe
- C. Buckelew
- T. Berrian
- J. Denny
- Jane Doe (2)
- S. Hayes
- John Doe (3)
- Darren Parent
- Adam Alford
- Adam Lea
- Anna Druhet

- Sue Ellen Monfra
- Edward Olsen
- Daniel J. Schilling
- Richard M. Thompson
- John Doe
- Ellen Shiver Kovach
- (First Name Unknown) Tropez
- Vicky (Last Name Unknown)
- (First Name Unknown) Thompson
- John Doe (2)
- Lindsey Valenti
- David DeRoche
- Danny Forbes
- Michael Blondeau
- John Doe (4)

Civil Action

No. 21 - 409

Sec.:

SECT. A MAG. 2

TENDERED FOR FILING

EB

FEB 24 2021

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

# 1983 Complaint

## Jurisdiction And Venue

This is a Civil action authorized By 42 U.S.C. Section 1983 to redress the deprivation, under color of State Law, of Rights secured By the Constitution of the United States. The Court Has Jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiffs Claims for injective relief are authorized By 28 U.S.C. Section 2283.

The Eastern District of Louisiana is an appropriate venue under 28 U.S.C. Section 1391(B)(2) Because It is where the events give Rise to this claim.

## Complaints

### PLAINTIFF

Plaintiff, Raymond Harold Kimble, III, is and was at all times mentioned Herein a PRETRIAL DETAINEE for the PARISH of Jefferson at the Jefferson Parish Correctional Center. He is currently Confined at the Jefferson Parish Correctional Center, in Gretna, Louisiana.

### Defendants

• Defendant, STATE OF LOUISIANA.
Address For Service: Currently Unknown

• Defendant, Parish of Jefferson.
Address For Service: Currently Unknown

• Defendant, Louisiana Supreme Court.
Address for Service: 400 Royal Street, New Orleans, LA 70130

• Defendant, Jone Doe, is employed as CHIEF JUSTICE at the Louisiana Supreme Court. She is legally responsible for all operations at the Louisiana Supreme Court and protect the Rights of all Court proceedings throughout the State of Louisiana.
Address for Service: 400 Royal Street, New Orleans, LA 70130

• Defendant, Ellen Shiver Kovach, is employed as CHIEF JUSTIC JUDGE at the 24th Judicial District Court. She is legally responsible

2

for all·operations at the 24ᵗʰ Judicial District Court and legally
responsible to protect the Rights of all Court proceedings throughout
the Parish of Jefferson.
Address for Service: 200 Derbigny Street, Gretna, LA 70053

   • Defendant, Richard M. Thompson, is employed as District
Defender at the 24ᵗʰ Judicial District Public Defender Office.
He is legally responsible for all operations at the 24ᵗʰ Judicial
District Public Defenders Office and to protect the Rights of all
Clients Represented by his office.
Address for Service: 848 Second Street, Gretna, LA 70053

   • Defendant, Daniel J. Schilling, Bar Roll # 35555, is employed as
Attorney at the 24ᵗʰ Judicial District Public Defender Office. He is
legally responsible to protect the Rights of all clients He represents.
Address for Service: 848 Second Street, Gretna, LA 70053

   • Defendant, Louisiana Public Defender Board.
Address for Service: 301 Main Street, Suite 700, Baton Rouge, LA
   70825

   • Defendant, John Doe, is employed as Chief Defender at the
Louisiana Public Defender Board. He is legally responsible for all
operations of the Louisiana Public Defender Board and to protect
the Rights of all indigent Clients throughout the State of Louisiana.
Address for Service: 301 Main Street, Suite 700, Baton Rouge, LA 70825

   • Defendant, Raymond S. Steib, Jr. is employed as Judge at the 24ᵗʰ
Judicial District Court. He is legally responsible to protect Right and
enforce law throughout all Criminal proceedings. He is the presiding
Judge over plaintiffs Criminal Case.
Address for Service: 200 Derbigny Street, Suite 3700, Gretna, LA
   70053

   • Defendant, 24ᵗʰ Judicial District Attorneys Office.
Address for Service: 200 Derbigny Street, Gretna, LA 70053

   • Defendant, 24ᵗʰ Judicial District Public Defender Office.
Address for Service: 848 Second Street, Gretna, LA 70053

   • Defendant, Lindsay L. Truhe, Bar Roll # 32892, is employed as
Assistant District Attorney at the 24ᵗʰ Judicial District
Attorneys Office. She is legally responsible to prosecute cases
in the 24ᵗʰ Judicial District Court.

3

Address for Service: 200 Derbigny Street, Gretna, LA 70053

- Defendant, Jefferson Parish Sheriffs Office.
Address for Service: 1233 Westbank Expressway, Harvey, LA 70058

- Defendant, Joseph P. Lopinto, III, is employed as Sheriff of the Jefferson Parish Sheriffs Office. He is legally responsible for the operation of the Jefferson Parish Sheriffs Office / Jefferson Parish Correctional Center and for the welfare of all inmates at the facility.
Address for Service: 1233 Westbank Expressway, Harvey, LA 70058

- Defendant, Sue Ellen Monfra, is employed as Deputy Chief of the Jefferson Parish Correctional Center. She is legally responsible for the operation of the Jefferson Parish Correctional Center and for the welfare of all inmates at the facility.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, Edward Oken, is employed as Major of the Jefferson Parish Correctional Center. He is Deputy Administrator and responsible for the welfare of all inmates at the facility.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, B. Bordelon, is employed as Captain of the Jefferson Parish Correctional Center. He is Assistant Deputy Administrator of the Jefferson Parish Correctional Center and responsible for the welfare of all inmates at the facility.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, Lindsey Valenti, is employed as Legal Advisor of the Jefferson Parish Correctional Center.
Address for Service: Currently Unknown

- Defendant, C. Sibbernagel, is employed as Sergeant at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, Anna Druhet, is employed as Sergeant at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, C. Buckelew, is employed as Sergeant at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, T. Berrian, is employed as Lieutenant at the Jefferson Parish ~~Sheriffs office~~ Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, S. Hayes, is employed as Deputy at the Jefferson Parish Correctional Center.
Address for Service: Currently Unknown

- Defendant, (First name unknown) Tropez, is employed as Deputy at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, (First name unknown) Thompson, is employed as Deputy at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, J. Denny, is employed as Parish Administrative Specialist for the Jefferson Parish Sheriffs office.
Address for Service: Currently Unknown

- Defendant, CorrectHealth.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, Jane Doe (2), is employed as Administrator for CorrectHealth. She is legally responsible for the welfare of all inmates at Jefferson Parish Correction Center and all operations for Correct Health. - 100 Dolhonde St., Gretna, LA 70053 -

- Defendant, John Doe (2), is employed as Doctor/Physician for CorrectHealth. He is legally responsible for the welfare of all inmates at Jefferson Parish Correctional Center, - 100 Dolhonde St., Gretna, LA 70053 -

- Defendant, Vicky (Last name unknown) is employed as, position unknown for CorrectHealth.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, John Doe (3), is employed as Law Library Administrator at the Jefferson Parish Correctional Center.
Address for Service: 100 Dolhonde Street, Gretna, LA 70053

- Defendant, David Deroche, is employed as detective at the Jefferson Parish Sheriffs office.
Address for Service: 1233 Westbank Expressway, Harvey, LA 70058

5

• Defendant, Darren Parent, is employed as detective at the Jefferson Parish Sheriffs Office.
Address For Service: 1233 Westbank Expressway, Harvey, LA 70058.

• Defendant, Parish OF East Baton Rouge.
Address For Service: Address currently Unknown

• Defendant, Baton Rouge Police Department
Address For Service: 9000 Airline Hwy., Baton Rouge, LA 70815

• Defendant, John Doe (4), is employed as CHIEF OF POLICE of the Baton Rouge Police Department.
Address for Service: 9000 Airline Hwy., Baton Rouge, LA 70815

• Defendant, Danny Forbes, is employed as detective at the Baton Rouge Police Department.
Address For Service: 9000 Airline Hwy., Baton Rouge, LA 70815

• Defendant, Adam Alford, is employed as detective at the Baton Rouge Police Department.
Address For Service: 9000 Airline Hwy., Baton Rouge, LA 70815

• Defendant, Michael Blondeau, is employed as detective at the Baton Rouge Police Department.
Address For Service: 9000 Airline Hwy., Baton Rouge, LA 70815

• Defendant, Adam Lea, is employed as detective at the Baton Rouge Police Department.
Address For Service: 9000 Airline Hwy, Baton Rouge, LA 70815

• EACH defendant is sued individually and in His/Her offical capacity. At all times mentioned in this complaint each defendant acted under the COLOR OF STATE LAW.

## I.

### Defendants

STATE OF LOUISIANA ; PARISH OF JEFFERSON ; ELLEN SHIVER KOVACH ; Louisiana Supreme Court ; Jane Doe

### Facts

· Defendants are currently prohibiting all jury trials throughout the STATE OF LOUISIANA, including but not limited to the Parish of Jefferson, WHICH IS in direct violation of plaintiffs Constitutional Rights. By prohibiting all jury trials ~~to~~ Plaintiff is also being denied his Constitutional Right to a Speedy Trial, both in violation of the Sixth Amendment. Defendants should have taken appropriate measures since March 16, 2020 to ensure plaintiffs DUE PROCESS RIGHTS - Fifth and Fourteenth Amendments - in all Court proceedings, including but not limited to Jury Trials Since the Start of the COVID 19 Pandemic.

• 12/3/2019 : Plaintiff reasserted his Right to a speedy and public trial by Jury, when a "Motion for Speedy Trial" and Subsequently Granted in all his Court proceedings. Under La. C. Cr. P. Art. 701(D)(i)(n) states: "The Trial of a defendant Charged with a Felon shall Commence within one-hundred-twenty days If He is in Continued Custody.

• 3/16/2020 : Global Pandemic, COVID 19, forcing all trials to Be Suspended.

• 6/15/2020 : Phase 2 of COVID 19 went into effect throughout the STATE OF LOUISIANA and Parish of Jefferson.

• 7/1/2020 : Trials were allowed to Commence throughout the STATE OF LOUISIANA and PARISH OF JEFFERSON - all bans lifted.

• 9/11/2020 : STATE OF LOUISIANA and PARISH OF JEFFERSON moved into PHASE 3.

• 11/24/2020 : 24th Judicial District Court, CHIEF JUDGE, Ellen Shiver Kovach, suspended all Jury Trials until January 11, 2021.

• 11/25/2020 : Parish of Jefferson moved BACK into Phase 2 of COVID 19.

• 1/2021 : Louisiana Supreme Court issued a STATE wide order suspending all Jury Trials until March 1, 2021. Upon Belief, Jane Doe, CHIEF JUSTICE, issued this order.

Plaintiff was set for a Jury Trial on December 14, 2020 and January 25, 2021 in the 24th Judicial District Court, Parish of Jefferson, STATE OF LOUISIANA, these trial dates were Continued due to the orders defendants put into effect. Since these Trials were suspended

7

Plaintiff was denied His freedom, Right To a speedy TRIAL, JURY TRIAL, and DUE PROCESS OF LAW.

Defendants knew since MARCH 16, 2020 COVID 19 was spreading throughout THE STATE OF LOUISIANA, including the PARISH of Jefferson. Defendants Have/Had absolute Power and a obligation to put in place all Safty measures in Court environments to stop the transmission of the Virus during the COVID 19 Pandemic, to ensure DUE PROCESS OF LAW for all Court Proceedings. Defendants deliberately disregarded putting all Safty measures in Court environments to stop the trasmission of the virus. If defendants would of fulfilled their obligation and properly used the power they posses, they would Have **ORDERED** all safty measures be mandated into Court environments, as well as modifying the structure of the Court Building to stop the spread of the VIRUS ~~to~~ and ensure DUE Process ~~RIGHTS~~ of LAW for all proceedings. THIS reckless disregard of defendants actions violated an ample amount of DUE PROCESS RIGHTS throughout THE entire STATE OF LOUISIANA including BUT NA limited to the Parish of Jefferson, causing irrepairable injuries.

It is **ABSURD** that Something as essential as Court proceedings and/or Jury Trials would be **SHUT BACK DOWN** when non-essential establishments provided a way to remain open by fullfilling the obligation to put all safty measures ~~TA~~ necessary to stop the transmition of the virus when the case numbers of COVID 19 went back up i.e., Movie Theathers, airports, CHURCHES, Sporting events, Clothing Centers, restraunts, and Casinos. If non-essential ~~es~~ estiblishments found away To keep going during the COVID 19 Pandemic, defendants Could Have used their **POWERS VESTED IN THEM** to keep Court proceedings and/or Jury Trials commencing.

# RELIEF

WHEREFORE, plaintiff respectfully ask that this Court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described Herein violated His Rights under the Constitution and law of the United States; and

• A preliminary and permanent injuction ordering defendants TO cease this UNCONSTITUTIONAL ACT; and

• Granting plaintiff compensatory damages in the amount of $250,000.00, against EACH defendant, jointly and severally, and

**8**

• Granting plaintiff punitive damages in the amount of $750,000.00, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

## II.

## Defendants

STATE OF LOUISIANA ; Parish Of Jefferson ; Richard M. Thompson; Dainel J. Schilling ; LOUISIANA Public Defender Board ; John Doe

## Facts

Plaintiff is indigent and represented by the 24th Judicial District Public Defenders Office, through Daniel J. Schilling. The 24th Judicial District Public Defenders Office, through Richard M. Thompson is not taking suitable measures for INDIGENT CLIENTS, which they represent. Plaintiff has no way of being able to afford private counsel, but has been deprived of all the same services private counsels GUARANTEES and/or able to do, inducing denying plaintiff his Sixth Amendment Right - effective assistance of counsel and Right to a Speedy Trial - and Fifth and Fourteenth Amendment - Due Process of Law and Freedom, equal protection Guarantee.

• 12/3/2019 : Plaintiff reasserted his Right to a speedy and public Trial by Jury, when a "Motion For Speedy Trial" and subsequently Granted in all his court proceedings. Under La.C.CR.P. Art. 701(D)(i)(A) States : "The Trial of a defendant charged with a felony shall commence within one hundred twenty day if he is in continued custody.."

• 3/16/2020 : Global Pandemic, COVID 19, forcing all Trials to be Suspended

• 6/15/2020 : Phase 2 of COVID 19 went into effect throughout the STATE OF LOUISIANA and Parish OF JEFFERSON. Private Counsel was allowed to enter Jefferson Parish Correctional Center.

• 7/1/2020 : Trials were allowed to commence throughout the STATE OF LOUISIANA and PARISH OF JEFFERSON - all bans lifted. Private Counsel Started Setting Trials Again.

- 9/11/2020: STATE OF LOUISIANA and PARISH OF JEFFERSON moved into PHASE 3

- 11/24/2020: 24th Judicial DISTRICT COURT, ~~CHEI~~ CHIEF JUDGE, ELLEN SHIVER KOVACH, suspended all Jury TRIals Until January 11, 2021.

- 11/25/2020: PARISH of JEFFERSON moveD BACK into PHASE 2 of COVID 19

- 1/2021: Louisiana Supreme Court issued a STATE wide ORDER Suspending all Jury TRials Until MARCH 1, 2021.

Plaintiff Had two viable TRial dates of August 24, 2020 and October 19, 2020 which were SET By the TRial Court in the Mist of the COVID 19 Pandemic; Schilling requested Continuances to Both of these trial dates. The TRial Court set New dates of December 14, 2020 and January 25, 2021; Both of these dates were Suspended.

Thompson would not allow Schilling to See plaintiff in person, nor allow Him in the Court House, this was for all Public Defenders Under His administration, which private counsel was allowed to do. As of the filing of this Complaint Thompson Has Granted very limited permission to the lawyers under His administration. What Thompson neglects to realize is the SERVICES HIS OFFICE PROVIDES are ESSENTIAL TO EVERY INDIGENT CLIENT HIS OFFICE REPRESENTS, espically the clients incar-cerated. This Has Caused a psychological Burden ~~on~~ on plaintiff Causing irredeemable Injury.

As emphized these services for INDIGENT CLIENTS are essential to there proceedings. These services should come with no restrictions due to the servecity of what their services provide "Freedom" as well as DUE PROCESS OF LAW for proper Justic to Prevail. Thompson should have Mandated counsel BACK to the Court, since theses Careers are essential OR Hire private counsel for indigent Clients. Delays for any Court Proceeding or TRial should not fail on the 24th Judicial District Public Defenders office, Causing ineffective assistance of counsel and DUE PROCESS OF LAW.

Thompson, Schilling and the Louisiana Public Defender Board was wrote multiple Times regarding this Complaint, to no avail.

# RELIEF

WHEREFORE, plaintiff respectfully ask that this Court enter Judgement:

10

• Granting plaintiff a declaration that the Acts and omissions described Herein violated His Right under the Constitution and law of the United States, and

• A Preliminary and Permanent injuction ordering defendants to cease this unconstitutional Act, and

• Granting Plaintiff compensatory damages in the amount of $ 250,000.⁰⁰, against each defendant, jointly and Severally, and

• Granting plaintiff puntive damages in the amount of $500,000.⁰⁰, against each defendant, jointly and Severally, and

• Any additional relief this court deems Just, Proper, and equitable.

III.

## Defendants

Parish Of Jefferson ; Raymond S. Steib, Jr.

## Facts

• **In April 2016**, Plaintiff was falsely arrested on : 8 Counts of Simple Burgulary of a Inhabited Dewelling - Bond set at $ 35,000.⁰⁰ each Count ; 1 Count of Aggrevated Flight From a Officer - Bond set at $ 20,000.⁰⁰ ; 1 Count of Theft - Bond set at $10,000.⁰⁰. These Charges were allotted to defendant.

• **In May 2016**, plaintiff was falsely rearrested on : 4 Counts of Simple Burgulary of a Inhabited Dewelling - Bond set at $ 40,000.⁰⁰ each Count. These charges were allotted to defendant.

• **In August 2016**, plaintiff was fasely rearresed on: 2 Counts of Simple Burgulary - Bond set at $ 30,000.⁰⁰ each Count. These charges were allotted to defendant.

• Plaintiff Has been in Continued Custody since the false Arrested in April 2016, the Bails Have all remained the same.

• Plaintiff filed " Motion For Speedy Trial " on all the above cases on the following dates: 7/1/2016, 12/20/2016, 2/12/2019, 3/25/2019, 5/21/2019, 6/10/2019, 6/27/2019, 7/23/2019, 8/13/2019, 8/30/2019 ; defendant denied all these "Motions For Speedy Trial".

• 12/3/2019, "Motion For Speedy Trial", was filed and subsequently Granted By defendant on all the above cases.

• 3/16/2020, plaintiffs "Motion For Speedy Trial" suspended Due to Covid 19.

• 3/16/2020, "Motion to Reduce Bail" was filed due to COVID 19, defendant subsequently denied this Bail reduction.

• 5/12/2020, "Motion to Release without Bail while pending Trial" was filed, defendant subsequently denied this motion.

• 9/24/2020, "Motion to Reduce Bail" was filed, defendant subsequently denied this motion.

• 12/15/2020, "Motion to Release without Bail while pending Trial" was filed, defendant subsequently denied this motion.

The eighth amendment states: "Excessive Bail shall not Be required..." The excessive Bail violated plaintiff fifth and fourteenth Amendments to due process of law, defendant denying to reduce plaintiffs bail deprived plaintiff of his freedom. The Bail is currently set at $1,530,000.00 and has Been set at this Rate for 58 months, this is an excessive Bail which plaintiff cannot afford.

The Constitutional provision of the DUE PROCESS CLAUSE prohibits prohibits the government from unfairly and arbitrarily depriving a person of FREEDOM, the Rights are so fundamentally important as to require compliance with due process standards of fairness and Justice. Defendant ALLOWING the Bail to remain at this "Excessive Rate" is improper and tortious use of a legitimately issued court process, Beyond the process's scope. Defendant should have protected the Rights of plaintiff By lowering Bail. Upon Belief, defendant is cooperating with the 24th Judicial District Attorney, keeping the Bail at the current rate to obtain a result that is unlawful. This has put a psychological Burden on plaintiff causing irredeemable injury.

# RELIEF

WHEREFORE, Plaintiff respectfully asks that this Court enter judgement:

• Granting plaintiff that the acts and omissions described herein violated his Right under the Constitution and law of the United States, and

• A preliminary and permanent injunction ordering defendants to cease this unconstitutional act, and

• Granting plaintiff compensatory damages in the amount of $300.00 each day, against each defendant, jointly and severally, and

• Granting plaintiff ~~punitiv~~ punitive damages in the amount of $750.00 each day, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

## IV.

**Defendants**

Parish of Jefferson ; 24TH JUDICIAL DISTRICT ATTORNEYS OFFICE ; 24TH JUDICIAL DISTRICT PUBLIC DEFENDERS OFFICE ; Daniel J. Schilling ; Richard M. Thompson ; Lindsay L. Truhe

## FACTS

• Schilling is appointed counsel for defendant

• Truhe is the assistant district attorney, prosecuting plaintiffs criminal cases.

On July 30, 2021 plaintiff was brought into the 24TH Judicial District Court, via **Zoom**. Note: Schilling was present in court via **Zoom**, upon belief he appeared to be in the presences of his home/office; Truhe was present in the court via **Zoom**, upon belief she appeared to be in the presence of her home/office. Schilling informed the court he would like to speak with plaintiff in a **BREAKOUT Room**; a **BREAK-OUT Room** is a private room on **Zoom** that allows defendants and counsel to privately speak - all aspects of the court are not present. This a private room to ensure attorney/client confidentiality. While in the **BREAKOUT Room** Schilling and plaintiff discussed details in reference to all cases, information the district attorneys office and/or Truhe was unaware of, this information would of been used to defenses advantage at trial. When Schilling and plaintiff returned to the virtual court, going back on record, plaintiff observed Truhe on her phone, she then immediately ran off camera when she seen plaintiff back on the screen. When Truhe went back on record she touched base on information that was discussed between

Schilling and Plaintiff in the **BREAKOUT ROOM.**

Plaintiff has, **REASON TO KNOW**, while Schilling and him were in the **BREAKOUT ROOM**, Schilling allowed Truhe to listen to the ENTIRE conversation which was approx. 20 minutes. Plaintiff was under the impression the **BREAKOUT ROOM** was confidential. Upon belief, data records will show Schilling and Truhe were sharing some form of communication with eachother throughout the entire duration of Schilling and Plaintiff being in the **Breakout-Room.** This was and did broke Attorney/Client privillages which violates the Sixth and Fourteenth Amendment of the United States Constitution. This also violates DUE PROCESS OF LAW.

Schilling breaking attorney/client privillages this falls below an objective standard of reasonableness. Plaintiffs Right To Refuse to disclosing and to prevent anyother person from disclosing confidential communication between the Client and attorney were violated when Schilling allowed Truhe to listen to their entire conversation. Attorney/Client privillages "forbids attorneys from disclosing confidential communication obtained from Client." It is important to note that the "OUTCOME" of all proceedings will be negatively effected by Schillings ineffective assistance of counsel, this is not within professional norms. The ineffectiveness of Schilling and Truhes conduct undermines the proper functioning of ~~Schillings~~ the adversarial process that the TRIAL cannot have a just result, performing prejudice to defense. Schilling and Truhe diliberately planned this act. Thompson has been wrote multiple times about Schilling cooperating and releasing information to the district attorneys office, to no avail.

## RELIEF

WHEREFORE, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described herein violated his Right under the Constitution of law of the United States, and

• A preliminary and permanent injuction ordering defendants to cease this unconstitutional act, and

• Granting plaintiff compensatory damages in the amount of $250,000.00, against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $750,000.00,

14

against each defendant, jointly and severally, and

- Any additional Relief this court deems just, proper, and equitable.

## V.

## DEFENDANTS

Parish of Jefferson ; Jefferson Parish Sheriffs Office ; Joseph P. Lopinto, III ; Sue Ellen Monfra ; B. Bordelon

## FACTS

The Cell design in the Northwing Section of Jefferson Parish Correctional Center is in violation of the United States Constitution - Right to Privacy Claim, characterized as deriving from the fourth Amendment, as incorporated by the Fourteenth Amendment. The design of where the toilets location is positioned in each individual cell routinely allows people of the other sex to view the inmate naked as he is using the toilet, regardless if he is standing or sitting using the toilet. Also the posistion of the shower area routinely allows people of the other sex to view the inmate naked as he enters and exits the shower, also while he is drying off. (Note: While inmates using the toilet standing up the front genital area is exposed to the controal booth and while using the toilet sitting down the back of the genital/buttock area is exposed to the controal booth routinely allowing people of the other sex to view the inmate as he is using the bathroom. The shower area is a small box to which a inmate cannot disrobe or dry off inside of, forcing the inmate to be naked exposing his genital area to the controal booth routinely allowing people of the other sex to view the inmate as he showers.) Upon belief and information the facility has a policy restricting all inmates from putting anything on the bars to block the view while the inmate uses the toilet. This design is forcing plaintiff to expose his genital areas, involuntary, in the presence of people of the other sex, making him feel demeaning and humiliated. Plaintiff has been experiencing this from March 2019 to the filing of this complaint.

This is a male/female Housing facility, both sexes are housed in the Northwing housing units - cells and shower areas are designed the same. Upon belief and information dorm are identical for male and females - making the facility in violation of the **EQUAL**

PROTECTION CLAUSE, Male deputies are not allowed to work by the female dorms, for the specific reason listed above as well as other reasons. Females are not forced to involuntary expose their genital areas in the presence of people of the other sex. The facility administrators have been aware of this violation but have deliberately choose to take "NO ACTION" to change its policies. The facility already has a policy to where only members of the same sex can escort a inmate to use the bathroom and/or shower, & when not on a housing unit.

THIS unconstitutional parish policy and/or custom has inflicted irreparable injury and damage upon plaintiff. There is a fundamental constitutional right to be free from forced exposure of ones persons to strangers of the opposite sex when not reasonably necessary for some legitimate, over riding reason, this is repugnant to notions of human decency and personal integrity.

## EXHAUSTION OF Legal Remedies

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. On February 1, 2021 plaintiff presented two facts relating to this complaint. On February 4, 2021 B. Bordelon "REFUSED" plaintiffs grievance for reasons of "NO violation articulated."

## RELIEF

WHEREFORE, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described herein violated his right under the constitution of law of the United States, and

• A preliminary and permanent injunction ordering defendants to cease this unconstitutional act, and

• Granting plaintiff compensatory damages in the amount of $750,000.00, against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $1,500,000.00, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

## VI.

## Defendants

Parish of Jefferson ; Sue Ellen Monfra ; Joseph P. Lopinto, III ; S. Hayes ; (First Name Unknown) Thompson ; Jane Doe ; CorrectHealth

## Facts

On March 5, 2020 at 1400 Hours, defendant, S. Hayes started Supervising the Housing Unit Plaintiff was Housed on. At approximentally 1730 Hours Plaintiff was going to the Shower area dressed in His Boxers and SHIRT, along with items to Shower with. As Plaintiff was walking past the door to enter the Housing unit, Hayes stopped Plaintiff asking Him to Show Him His penis, Plaintiff told Hayes, "NO!" Hayes responded to Plaintiffs answer with, in Paraphrase, "If you don't Show me Your penis I will write you up!" Plaintiff Proceeded to the Shower and did not comment on what Hayes stated. As Plaintiff was in the Shower, Hayes Shined His flash light through the Shower window and Shower Curtain. When Plaintiff peeped His Head out the Shower Hayes gestured to Plaintiff, He was going to write Him up if Plaintiff didn't Show Him His penis. Once Hayes gestured this, Plaintiff then followed the order given to Him and opened the Shower Curtain so Hayes Could see His penis. Note: Hayes also committed other sexual acts on this Housing Unit this specific day. Subsequently this incident as well as other incidents were reported to the Jefferson Parish Detective Bureau, Hayes was arrested for these Crimes.

The Jefferson Parish Correctional Center -Inmate Handbook- Subparagraph "CONDUCT" states:

Inmates must obey direct verbal orders cooperatively and promptly, not debate, argue, or ignore them Before obeying. When orders Conflict the last order must be obeyed. Even orders the inmate Believes is improper must be obeyed; grievances must be pursued through proper Channels.

Plaintiff Believed this order to Be improper but still Had to follow the order that was given to Him, as the Handbook clearly states.

Since this incident Plaintiff Has suffered from severe emotional distress and mental injury. Hayes took advantage of a situation that He controled, forcing Plaintiff to do something He did not want

to do. This made it hard for plaintiff to trust all deputies intentions and/or motivations.

# Exhaustion of Legal Remedies

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. On March 9, 2020 plaintiff presented the facts relating to this complaint. On March 16, 2020 Captain Aaron Wilkie founded the grievance.


## B.

Due to the above listed PREA incident ~~accused~~ on March 11, 2020 plaintiff was told to pack up to be moved. Defendant, Thompson, came to the Housing unit plaintiff was on to escort him to Administrative Segregation. Plaintiff informed Thompson, when he is move the escorting deputy gets a cart so plaintiff can put his property on - plaintiff has a vast amount of legal documents, which are in two large boxes- Thompson told plaintiff, in a very hostile manner, "There will be no ~~courtesie~~ courtesies for you!" Thompson then entered the Housing unit, rushing plaintiff to move faster. Thompson was very hostile, screaming and yelling at plaintiff. Thompson seen the two boxes plaintiff has and told plaintiff, in paraphrase, "If you don't carry everything what ever you don't carry will be left." When Thompson seen plaintiffs mattress, he told plaintiff, "You don't deserve a Good mattress!"

Plaintiff carried both boxes into the hall, one at a time, stacking the boxes on top eachother. After this Thompson handcuffed plaintiff and ordered him to, "Grab the boxes!" When Thompson realized he could not grab the boxes, Thompson ordered him to hold his arms out - handcuffed - then grabbed both boxes at the same time throwing the boxes on plaintiffs arms. Plaintiffs back was instantly hurt due to the weight of the boxes. Plaintiff questioned Thompson on, "What is your problem with me?" Thompson responded, "You know what you did, didn't you report something?", referring to the above PREA with Hayes. Plaintiff continued to inform Thompson, the boxes were hurting his back. Thompson told plaintiff, in paraphrase, "If the boxes are left you will not get them back." At this point plaintiff allowed for his back to continuing hurting in fear that he would not get his legal documents if he left them.

As Thompson and plaintiff were waiting to get on the elevator plaintiff asked Thompson, "Will you take the boxes down while we wait

18

for the elevator?" Thompson told plaintiff, "I am not Helpping you." Again plaintiff informed Thompson, "My BACK is Hurting from the Boxes." Thompson forced plaintiff to carry the Boxes for 4 to 5 minutes. When Thompson and plaintiff reached the 4th Floor, getting off the elevator, plaintiffs arms gave out and He dropped the Boxes. At this point Thompson uncuffed plaintiff and allowed Him to carry the Boxes one at a time to plaintiffs new Housing unit (Administrative Segregation).

The Jefferson Parish Correctional Center – **INmate Handbook** – SubParagraph "Conduct" states:

Inmates must obey direct verbal orders cooperatively and promptly, not debate, argue, or ignore them before obeying. When orders Conflict the last order must be obeyed. Even orders the inmate Believes is improper must be obeyed; grievances must be Pursued through proper channels.

Even though plaintiff was in pain from the weight of the Boxes – roughfully 80 pounds – which Thompson forced Him to carry, plaintiff still Had to follow the last order given to Him.

Plaintiffs back was severely Hurt after this, which still effects Him today. When plaintiff woke up on March 12, 2020 His back was stiff and Hurt to move. Plaintiff turned in multiple sick calls to medical to no avail. The LPN (Licensed Practical Nurse) and/or CNA (Certified Nursing Assistant) continually gave plaintiff minute remedies to Help resolve the pain and stiffness, to no avail. Again plaintiff continually requested to be seen by someone in medical who could actually do Something, these went on for more than 90 days that plaintiff was denied medical. Once plaintiff was seen by medical the Nurse-Practitioner after two visits it was concluded plaintiff Has swollen Nerves which is Causing the Pains. Plaintiff now takes a pill twice a day to keep the nerve from swelling, at times the nerve Becomes inflammed again Causing sever pain. When the nerve swells up Schocks are sent through plaintiffs BACK (lower) and legs making it Hard to walk when this Happens. This Has Been going on for almost a year to no avail.

# EXHAUSTION OF LEGAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. On March 15, 2020 plaintiff presented the facts in reference to Thompson, relating to this

Complaint. On May 4, 2020 Captain Aaron Wilkie FOUNDER the grievance, exhausing the Grievance. Wilkie did not Complete the entire investigation plaintiff filed, plaintiff attempted to further the Grievance But the form was returned to plaintiff due to the Grievance Being "FOUNDED."

Plaintiff used the "Inmate Grievance Form" available at Jefferson Parish Correctional Center. On June 20, 2020 plaintiff presented the facts relating to Him not seeing medical in reference to His back pains for over 90 days not Being Screen By medical. Plaintiff Continued the Grievance until He was sceen By medical, almost 120 days later But once He was Seen By medical, plaintiff decided the Grievance was no longer needed. NOTE: Plaintiff still waited 90 days to see medical, even in the inital response on date 7/8/2020 plaintiff still was not Seen By medical Making it to almost 120 to 140 days.

# RELIEF

WHEREFORE, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described Herein violated His Right under the Constitution of Law of the united States, and

• A Preliminary and permanent injiction ordering defendants to cease this unconsthtutiwal act, and

• Granting plaintiff compensatory damages in the amount of $25,000.⁰⁰ against defendant Hayes only, and

• Granting plaintiff punitive damages in the amount of $150,000.⁰⁰, against defendant Hayes only, and

• Granting plaintiff compensatory damages in the amount of $250,000.⁰⁰, against defendant ~~Hayes only and~~ Thompson only, and

• Granting plaintiff punitive damages in the amount of $150,000.⁰⁰, against defendant Thompson only, and

• Granting plaintiff compensatory damages in the amount of $250,000.⁰⁰, against defendants: Parish of Jefferson, Sue Ellen Monfra and ~~Joe~~ Joseph P. Lopinto, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $1,000,000.00, against defendants: Parish of Jefferson, Sue Ellen Monfra, and Joseph P. Lopinto, III, jointly and severally, and

• Granting plaintiff compensatory damages in the amount of $150,000.00, against defendants: CorrectHealth and Jane Doe, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $500,000.00, against defendants: CorrectHealth and Jane Doe, jointly and severally, and.

• Any additional relief this court deems just, proper, and equitable.

## VII.

## Defendants

Parish Of Jefferson ; Jefferson Parish Sheriffs Office ; Joseph P. Lopinto, III ; Sue Ellen Monfra ; C. Silbernagel ; Edward Olsen

## Facts

Jefferson Parish Correctional Center is mixing general population inmates with Administrative Segregation Inmates, housing them in the same Housing Unit i.e., some cells have administrative segregation inmates while others have general population. Each Administrative Segregation Cell is allowed out the cell one hour a day, general population is locked down while this takes place. Some Administrative Segregation Inmates are hostile toward General Population Inmates - the Hostile Administrative Segregation inmates threaten the General Population inmates by telling them, they will throw feces in the cells when they come out for their hour and/or will get out the cell to physically fight them. These Administrative Segregation inmates are a Higher security level than the general population housed on the same dorm putting the General Population at Risk for Harm. Some of the deputies intentionally allow Administrative Segregation Inmates out with the General Population, while at times they are accidently mixed together. Numerous examples/incidents can and will be provided with dates to which Administrative Segregation Inmates have: physically fought General Population Inmates; threw feces on general population inmates; was allowed out and mixed with general

21

population for multiple day; Hostile toward deputies/staff; and mixed Administrative Segregation Inmates with General Population in the same cell. This is still an existing issue, as of this filing.

THE FACILITY IS ~~SUPPOSED~~ SUPPOSED TO PROTECT ALL INMATES FROM HARM AND UNREASONABLE RISK, WHICH THIS FACILITY CONTINUALLY DISREGUARDS BY ALLOWING ADMINISTRATIVE SEGREGATION AND GENERAL POPULATION INMATES ALLOWED ON THE SAME HOUSING UNIT.

# EXHAUSTION OF LEGAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. On November 22, 2019 plaintiff presented the facts in reference to ~~the reports~~ the above complaint. Subsequently the Grievance Proceedure was exhausted and denied by the facility's Administrations.

## B.

Subsequent to all the above mentioned, on August 20, 2020 a Administrative Segregation Inmate was allowed out His cell while plaintiff was out His cell, and the Administrative Segregation Inmate ATTACKED Plaintiff, WHICH LED to a fight. From the fight plaintiff Had Body Aches and Bruses for approximately 6 days. Plaintiff was immediately seen by medical for His injuries.

Administrative Segregation Inmates are Consistantly Harassing the General population, in a variety of ways. Law States, "The facility is supposed to protect all inmates from Them and Unreasonable Risk!" Placing Administrative Segregation Inmates in the general population is a THREAT to all inmates in the general population. Reason why there is a specific Housing Unit for Administrative Segregation Inmates. These Inmates in the general population is a RISK to all general population Inmates, which this facility deliberately disreguards. This Unconstitutional Parish Policy And/or Custom Has inflicted injury and damage upon plaintiff. The facility is disreguarding a substantial Risk of Harm. Administrations knew/Knows there is/was a substantial Risk ~~Placea~~ plaintiff Could be Harmed and failed to respond reasonable to protect Him, This is in violation of the Eighth Amendment.

# EXHAUSTION OF LEGAL REMEDIES

·Plaintiff used the "Inmate Grievance Form" available at the
Jefferson Parish Correctional Center. On August 20, 2020 plaintiff presented
the facts related to this complaint. On September 4, 2020 the
Facility FOUNDED this Grievance.

# RELIEF

WHEREFORE, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions
described HEREIN violated his right under the Constitution of Law of
the United States, and

• A preliminary and permanent injuction ordering defendants to
~~cease~~ cease this unconstitutional act, and

• Granting plaintiff compensatory damages in the amount of $10,000.⁰⁰,
against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $150,000.⁰⁰,
against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.


~~VIII.~~

# DEFENDANTS

   Parish of Jefferson ; Anna Druhet ; B. Bordelon ; Sue Ellen
Monfra ; Joseph P. Lopinto, III

# FACTS

## HOMOSEXUALS HAVE BEEN HISTORICALLY DISCRIMINATED AGAINST

   Sgt. Anna Druhet is/was harassing plaintiff as well as the
Homosexual Housing unit at the Jefferson Parish Correctional Center.
She has conducted numerous shake downs and solely singled out
the Homosexual Housing unit, which records will reflect. Druhet
also singled out plaintiff for filing grievances on Her actions.
Events that show "Campaign Of Harassment" are as follows:

• 8/31/2020, Druhet singled out the Homosexual ~~Deena~~ Housing

Unit by searching each inmates for extra padding in their mattresses. She claims in numerious "Inmate Disciplinary Action Reports" (DAR) that were issued to multiple inmates on this Housing unit, she was conducting a stakedown for extra mattresses. Upon belief and information DARS were only issued to the Homosexual Housing unit. Druhet woke each inmate up, in the middle of the night, to look at each mattress. She did not wake no other inmates up on the surrounding Housing units, nor did she confiscate extra mattress padding and/or mattresses. It would be hard to believe that no other dorms had extra padding and/or mattress on their dorm Housing units. DRUHET SOLELY TARGETED THE HOMOSEXUAL HOUSING UNIT. This shakedown was not rationally related to a penological need.

• 11/10/2020, DRUHET and ERIC MARTAIN entered the Homosexual Housing unit to conduct a security check, as stated in the numerious DARS issued to this Housing unit. A security check was not conducted BUT a SHAKEDOWN was conducted, this happened after "Lights Out." DRUHET went through locker boxes, under beds, and made inmates wake up to check their mattress, looking for extra thick mattresses. Numerious DARS were only issued to the Homosexuals Housing unit — upon belief and information no other DARS were issued to none of the surrounding units and/or any where else throughout the facility, while DRUHET and MARTAIN conducted a security check. Upon belief the Homosexual Housing unit is not THE only Housing unit in which inmates had items they are not supposed to have, it would be ABSURD to believe all other dorms Housing units were in compliance with the Jefferson Parish Correctional Center Guideline. DRUHET SOLEY TARGETED THE HOMOSEXUAL HOUSING UNIT. This Shakedown was not rationally related to a penological need.

• 11/18/2020, DRUHET and Martain conducted a Shakedown on the Homosexual Housing unit, Shakedown was required. DRUHET went through each mattress and ordered deputies to take the mattresses due to Her belief the mattress contained extra padding. DRUHET JUST DOESN'T want Homosexuals to have decent mattresses. None of these mattress that were taken were altered, upon belief this can be verified by Sgt. C. Buckelew, to where the mattress were brought.

• 11/27/2020, DRUHET shake-down multiple Inmates on the Homo-sexual Housing UNIT as she claims she was conducting a security check, as well as shake plaintiff down. DRUHET did not confiscate no items and/or issue DARS, DRUHET SOLELY TARGETED THIS DORM. This Shakedown was not rationally related to a penological need.

24

• 11/28/2020, DRUHET attempted to take plaintiff and another inmates mattress, claiming both mattress were extra thick. Once the mattress were brought into the Hall being further inspected, the Housing Unit Deputy, Cpt. Brown, inspected the mattresses with DRUHET. Browns findings were, both mattresses were not tampered with. Upon belief and information DRUHET was not assigned as the supervising sergeant over this Housing unit. She went out her way to HARASS the Homosexual Housing unit about mattresses, when she shook down the day prior. DRUHET SOLELY TARGETED THIS DORM. This was not rationally related to a penological need.

• 1/14/2021: At 2355 Hours DRUHET and Maitain along with two other deputies were called to Southwing 4 Housing units, one on of the Housing Units is a Homosexual Housing Unit - due to inmates not locking down on multiple units. Plaintiff was sleeping and DRUHET woke him up to go through His Housing Area. DRUHET INSTRUCTED Maitaini to take Plaintiffs mattress due to Her belief it contained extra cotton. DRUHET also ordered another inmates mattress to be taken. DRUHET SOLELY TARGETED THIS DORM AND PLAINTIFF. This shake-down was not rationally related to a penological need.

All the above listed incidents shows "Campaign of Harassment" which DRUHET ONLY commits against HOMOSEXUALS. DRUHET does not conduct this same type of Behavior on none of the other Housing units by the Homosexual Housing unit. Upon belief she does not conduct this type of Behavior through out the entire facility. DRUHET is searching just to Harass, which is not justified by a penological need. Her actions are overly Harsh and a exaggerated response to a real concern. PRETRIAL DETAINEES retain a limited expectation of privacy under the Fourth Amendment that protects them from searches that are not done for legitimate security reasons.

DRUHET is violating plaintiffs Rights under the Due Process of Law - Fifth Amendment, Fourteenth Amendment, Eighth Amendment and Fourth Amendment.

## EXHAUSTION OF LEGIAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. Subsequently Captain B. Bordelon denied all Grievances filed on the above Incidents for reasons of Multiple complaints and Dupliate Grievances

## B.

After plaintiff filed the above listed grievance on DRUHET, she retaliated on plaintiff by waking him up to be searched on January 14, 2021. DRUHET is searching plaintiff just to harass which is not justified by a penological need because of the grievance plaintiff filed on HER. The grievances plaintiff filed on DRUHET is a exercise of his First Amendment Right, which is "Protected Conduct," something plaintiff has a Constitutional Right to do. DRUHET is showing a "Adverse Action" by Harassing plaintiff in a attempt to stop him from continuing with grievances. DRUHETS Harassment is directly related to plaintiffs "Protected Conduct", there is a "Causal Connection". On January 14, 2021 plaintiff advised DRUHET she is Harassing Him, and asked him to stop.

NOTE: Upon Belief and information, when grievances are turned in the Grievance is processed through the mailroom, causing these grievances to go through many individuals. This causes Gossip amongst JPCC staff and retaliation upon the inmate before the Grievances are properly reviewed. Grievances should be turned directly into Administrations, or a Better procedure for grievance to reach Administration.

## EXHAUSTION OF LEGAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available at The Jefferson Parish Correctional Center. Captain B. Bordelon denied the grievance on the above incident (paragraph 1) for a reason of Vague Complaint. Bordelon also denied the Grievance on the above listed facts (paragraph 2) for a reason of "request."

## RELIEF

WHEREFORE, plaintiff respectfully ask that this Court enter judgement:

• Granting plaintiff a declaration that the Acts and omissions described Herein Violated his Rights under the Constitution of Law of the United States, and

• A preliminary and permanent injuction ordering defendants to cease this unconstitutional act, and

• Granting plaintiff compensatory damages in the amount of $10,000.00, against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $100,000.⁰⁰, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

## IX.

## Defendants

Parish of Jefferson ; Sue Ellen Monfra ; Joseph P. Lopinto, III ; CorrectHealth ; C. Buckelew ; T. Berrian ; B. Bordelon ; J. Denny ; Jane Doe (2) ; John Doe(3) ; (First name unknown) ~~Trepez~~ Tropez ; Vicky (Last name unknown)

## Facts

### Background

• Prior to 12/17/2020 numerious request were sent to maintance as well as multiple deputies notified maintance in reference to a leaking toilet, this went on for almost a period of four mounths, to no avail.

• There is only two toilets on the Housing unit plaintiff was being housed on. One toilet is to sit down to use the bathroom and the other tiolet is to stand up to use the bathroom. There are no urinals on this housing unit.

• Upon Belief and Information on the Housing unit plaintiff was being housed on, the flooring in the bathroom area is the only Housing unit that has the following peg type of floor. Throughout the entire bathroom area the floor contains a High Gloss Paint, with little to no texture for grip making the floor extreamly slipperly when wet. The floor is even more slippery when a inmate is wearing the Jefferson Parish Correctional Center issued shoes. (A Grievance was filed on this but frivolously denied).

On December 17, 2020 at approx. 1430 Hours, after plaintiff used the bathroom he slipped and fell by the sit down toilet - this is the toilet that leaks also the only clean toilet to sit down on. Plaintiff slipped due to the water leaking from under the toilet forming a puddle, then going to the drain. In attempt to help plaintiff, Dane McReynoldes, ran to the area plaintiff was in. McReynolds slipped and fell as well. When McReynolds slipped and fell, he urinated on his-self. When

deputies arrived to assess the sistuation, no deputy and/or Correct Health staff would enter the bathroom area due to a fear they would slip and fall as well. Lieutenant T. Berrian continually said in a very loud manner, "They were playing in the dorm, they are not hurt." The deputies ordered McReynolds and plaintiff to crawl from the bathroom area. McReynolds crawled from the bathroom area but plaintiff was in to much pain to move. Under Berrians command, He instructed the deputies to get a 5 link Handcuff chain to pull plaintiff from the Bathroom area. Plaintiff continually told the deputies He was in to much pain to move and could not grab the 5 link Handcuff chain. Finally plaintiff followed His last direct verbal order and grassed the 5 link Handcuff chain to be pulled out the Bathroom area, this put plaintiff in more pain than He was alredy in from the jerking mottions of being pulled. When the deputies pulled plaintiff from the bathroom area, He was pulled through McReynolds urine. McReynolds and plaintiff were both soaked in McReynolds urine.

Plaintiff was ordered, by Correct Health, to be brought to the clinic by wheelchair. Once plaintiff was examined by the Nurse-Practitioner she ordered for plaintiff to recieve X-Rays and for Him to be placed in the infirmary over night for observation.

When plaintiff was brought to the infirmary, He was still soaked in McReynold's urine, plaintiff continually asked to recieve a shower due to the fact He slipped in water by the toilet area and He was covered in urine from McReynolds. Plaintiff was soaked in urine from 1430 Hours to 2000 Hours until He finally recieved a shower and clean clothes. Plaintiff continually asked to take a shower but was told everytime He asked, "A male deputy Has to escort Him to the shower", thus denying Him a shower.

On 12/18/2020 the nurse-Practitioner ordered plaintiff to be brought to University Medical Center (umc) for X-Rays. UMC found, plaintiff had injuries consistant with a slip and fall, sending specific orders to Correct Health for plaintiffs condition. Correct Health refused to follow the orders and prescribed medications UMC sent for Correct Health to follow.

Since this incident plaintiff Has filled out multiple sick calls relating to injuries to which Correct Health Refuses to examine plaintiff.

# EXHAUSTION OF LEGAL REMEDIS

Plaintiff used the "inmate Grievance form" available at the Jeffersn Parish Correctional Center. Plaintiff filed multiple individual

Grievances presenting the facts relating to this complaint. As of the filing of this complaint, some of the grievances have been exhausted, while others are still pending.

## B.

Following the above complaint on December 19, 2020 at 1415 hours McReynolds and Plaintiff were released from the infirmary related to the slip and fall on December 17, 2020. McReynolds and Plaintiff were moved from the infirmary to 2nd Floor Holding, both placed in the same Holding tank. (2nd floor Holding is not designated to hold inmates for a extensive amount of time. These Holding tanks are designed for Attorney visits.)

On December 19, 2020 around 1700 hours, deputy Young escorted McReynolds to take a shower, McReynolds asked Young to provide him with a pair of shower shoes but Young could not locate no shower shoes (the facility does not provide inmates with shower shoes). McReynolds showered in his Jefferson Parish Correctional Center issued shoes, so that his feet were not on the unsanitized shower floor. When McReynolds returned to the Holding tank from taking a shower Plaintiff was escorted to the shower area by Young. Unknowlying when Plaintiff returned from the shower area to the Holding tank, McReynolds unintentionally wet the entire area by the door due to his shoes being wet from him showering in them. As Plaintiff entered the Holding tank he slipped on the wet floor. (Note: The Jefferson Parish Correctional Center issued shoes have no grip when on smooth "wet" surfaces.) When Plaintiff slipped McReynolds was right there and Plaintiff grabbed McReynolds in a attempt to not fall. In the process of Plaintiff grabbing McReynolds both of them went to the ground, injuring both of them. Young witnessed this entire event. (Note: The floor in the Holding tank is a high gloss floor made of tile when wet and in the Jefferson Parish Correctional Center issued shoes, these together make very slipperly circumstances.)

Nurse Vicky was in 2nd floor control, Young immediately summoned her to help McReynolds and Plaintiff. As Plaintiff was being examined Vicky thought Plaintiff had a concussion and ordered Young to find a flashlight. Vicky concluded that ice packs were needed and some form of pain relief and/or inflammation relief were needed for both inmates, she wrote this down on a yellow tablet. Vicky told both inmates she would bring these medical necessities back to them but she never returned. Plaintiff continually requested for medical assistance but was denied.

As Young was informing 2nd floor Northwing Controal Deputies what happened with McReynolds and plaintiff, as well as Vicky, Tropez told Young in paraphrase, "They Are playing they did not fall!." Young immediately responded to Tropez' comment in paraphrase stating, "I SEEN IT HAPPEN!" This was overheard by plaintiff.

About 20 to 45 mintres after plaintiff fell, he started to vomit in the holding tank, Tropez was notified of this and she disregaurded the sistuation.

The Facility and CorrectHealth took no action to help plaintiff with his injuries. This sistuation was disregarded. **NOTE:** On 12/20/2020 plaintiff and McReynolds seen Vicky and asked Her, "Why didn't you bring the medication and ice packs back?" Vicky responded, "I forgot."

Since this incident plaintiff has filled out multiple sick calls relating to injuries to which CorrectHealth Refuses to examine plaintiff.

## EXHAUSTION OF LEGAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available ~~to~~ AT THE Jefferson Parish Correctional Center. Plaintiff filed Grievances presenting the facts relating to this complaint. As of the filing of this complaint plaintiff is still waiting on a response to this Grievance.

## C.

Following both of the slip and fall incidents above, plaintiff was held in multiple different holding tanks that are not designated to keep inmates in for hours at a time. Plaintiff has/had injuries from a recent fall, which he was in a excessive amount of pain. Plaintiff was issued a mattress in the holding tanks but had to sleep on the floor. Sleeping on the floor continvally put plaintiff in more pain, having to get up and down from the floor. This went on from December 19, 2020 to December 21, 2020.

## EXHAUSTION OF LEGAL REMEDIES

Plaintiff used the "Inmate Grievance Form" available at the Jefferson Parish Correctional Center. Plaintiff filed a grievance presenting the facts relating to this complaint. As of the filing of this complaint plaintiff is still in an attempt to exhaust the Grievance.

# RELIEF

WHEREFORE, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described herein violated his Rights under the Constitution of Law of the United States, and

• A preliminary and permanent injuction ordering defendants to cease this unconstitutional act, and

• Granting plaintiff compensatory ~~dam~~ damages in the amount of $250,000.⁰⁰, against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $500,000.⁰⁰, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

# X.

# Defendants

Parish of Jefferson ; Jefferson Parish Sheriffs Office ; Joseph P. Lopinto, III ; Sue Ellen Monfra ; John Doe (3) ; David DeRoche ; Darren Parent ; Parish of East Baton Rouge ; Baton Rouge Police Department ; Adam Lea ; Adam Alford ; Danny Forbes ; Michael Blondeau ; John Doe (4)

# FACTS

Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606, 618 (1996): arguing that a prisoner could prove actual injury if the "Inadequacies of the law library" prevented him from even filing a complaint.

The law library at the Jefferson Parish Correctional Center HAS ALWAYS ADVISED plaintiff, when he would request information and/or assistance in filing civil complaints, that: "The Law Library at the facility only handles criminal matters, nothing civil in nature." This caused plaintiff to miss a false arrest claim / false imprisonment against the arresting detectives and the agencies they represent. The United States Supreme Court has

held the statute of limitations for false arrest / false imprisonment claims began to run at the "time the claimant becomes detained pursuant to legal process." In Louisiana personal injuries claims are governed by La. Civ. Code Art. 3492, which provides the prescriptive period for delictal actions, which a period of one year from the date of injury or damage, since plaintiff was unable to get the information and/or assistance needed to properly file a false arrest / false imprisonment claim within the prescriptive period caused him to miss the claim. Plaintiff, within the last two months, discovered the proper prescriptive period to file a false arrest / false imprisonment claim, and after reading the above cited case plaintiff realized he could file a backward-looking claim due to the inadequacies of the law library preventing him from filing the Complaint.

## BACKWARD-LOOKING CLAIM

• 4/15/2016, Brian Daniel Ernst was arrested by the Jefferson Parish Sheriff's Office by Detectives David DeRoche and Darren Parent. In the interview, Ernst specifically told the detectives plaintiff had nothing to do with the crimes

• 4/16/2016, DeRoche and Parent prepared arrest warrants for plaintiff, the arrest warrants were not facially valid: DeRoche fabricated the warrant by stating Ernst implicated plaintiff into the crimes and fabricated what a witness said. Exculpatory evidence, impeachment evidence, evidence, and scientific evidence was omitted from the warrant. DeRoche knew if he would have placed all the above facts into the warrant application probable cause would have never existed, making the warrant application unreasonable. DeRoche applied for the arrest warrant deliberately and recklessly made false statements and/or omissions that were material to the finding of probable cause. The judge would have never issued the warrant with the false information redacted, or omitted information restored; these were not reasonable mistakes. Absent of police misconduct plaintiff would not have been charged in the first place.

• 4/15/2016 to 4/21/2016, DeRoche and Parent coerced and groomed Ernst into implicating plaintiff into numerous crimes.

• 4/18/2016, Ernst was transported from the Jefferson Parish Correctional Center to the Jefferson Parish Detective Bureau to interview Ernst. From Ernst being coerced and groomed by DeRoche and Parent, Ernst implicated plaintiff into crimes "Ernst committed."

• 4/21/2016, Baton Rouge Police Detectives: Adam Alford; Michael Blondeau; and Adam Lea went to the Jefferson Parish Detective Bureau to interview Ernst. Alford, Blondeau, and Lea specifically told Ernst they need him to them plaintiff committed these crimes with him.

• 4/21/2016, Baton Rouge Police Detective Danny Forbes prepared arrest warrants for Ernst and plaintiff; 4/25/2016, Lea prepared arrest warrants for Ernst and plaintiff; 4/27/2016, Alford prepared arrest warrants for Ernst and plaintiff; These arrest warrants were not facially valid: Ernst was coerced and groomed into implicating plaintiff into the crimes Ernst committed; There were other suspects that were not mentioned in the warrant; Exculpatory evidence, Impeachment evidence, physical evidence, and scientific evidence was omitted from the warrant. These detectives knew if they would have placed all the above factors into the warrant application probable cause would have never existed, making the warrant application unreasonable. These detectives applied for the arrest warrant deliberately and recklessly made false statements or omissions to the finding of probable cause. The Judge would not have issued the warrant with false information redacted, or omitted information restored; these were not reasonable mistakes absent of police misconduct, plaintiff would not have been charged in the first place.

• In May 2016, DeRoche and Parent coerced and groomed Dustin Johnson into implicating plaintiff into crimes Johnson committed. Johnson was brought to the detective bureau numerous times.

• 5/19/2016, DeRoche and Parent re-booked plaintiff on the multiple crimes Johnson committed. This arrest was not facially valid: Johnson was coerced and groomed into implicating plaintiff into the crimes Johnson committed; Exculpatory evidence, Impeachment evidence, physical evidence, ~~was~~ and scientific evidence was omitted from the ~~warrant application~~ ~~base other suspects not mentioned~~ arrest; other suspects were not mentioned as well. These detectives knew if they would have placed all the above factors in the arrest, probable cause would have never existed, making the arrest unreasonable. These detectives deliberately and recklessly made false statements or omissions to the arrest. These were not reasonable mistakes absent of police misconduct, plaintiff would not have been charged in the first place.

• 8/8/2016, DeRoche and Parent re-booked plaintiff on the multiple crimes Johnson committed. This arrest was not facially valid; ~~detectives~~ Ernst was coerced and groomed into implicating plaintiff into the

Crimes Ernst committed; Exculpatory Evidence, Impeachment Evidence, physical evidence, and scientific evidence was omitted from the arrest; other suspects were not mentioned as well. These detectives knew if they would have placed all the above factors in the arrest, probable cause would have never existed, making the arrest unreasonable. These detectives deliberately and recklessly made false statements or omissions to the arrest. These were not reasonable mistakes, absent of police misconduct, plaintiff would not have been charged in the first place.

Due to the inadequacies of the law library plaintiff was prevented from filing the above BACKWARD looking claim. This Backward looking claim was non-frivolous and relief could have been granted in law and fact if plaintiff would have recieved adequate information and/or assistance from the facilities Law Library. The above Backward looking claim has put a psychological burden on plaintiff causing irredeemable injury due to plaintiff not having freedom, as well as other events. Plaintiff has been denied his "FREEDOM" for almost five years due to the police misconduct these detectives committed.

# RELIEF

Wherefore, plaintiff respectfully ask that this court enter judgement:

• Granting plaintiff a declaration that the acts and omissions described herein violated his Rights under the Constitution of Law of the United States, and

• A preliminary and permanent injuction ordering defendents to cease this unconstitutional act, and

• Granding plaintiff compensatory damages in the amount of $5,000,000.00, against each defendant, jointly and severally, and

• Granting plaintiff punitive damages in the amount of $10,000,000.00, against each defendant, jointly and severally, and

• Any additional relief this court deems just, proper, and equitable.

34

CONCLUSION

WHEREFORE it is FURTHER asked of THIS COURT:

• Any and all insight THIS court views Plaintiffs Rights were Violated under the United States Constitution in all the above listed case numbers To WHICH Plaintiff may not Have stated — plaintiff is not a lawyer Nor does He Have a adequate law library to assist Him, and

• Plaintiff also seeks a jury trial on all issues triable By Jury, and

• Plaintiff also seeks recovery of cost in this suit, and

• Any and all additional Relief this court deems Just, proper, and equitable.

Respectfully Submitted,

2/18/2021

Raymond H. Kimble, III


VERIFICATION


I Have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I Believe them to Be True. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Gretna, Louisiana on FEBRUARY 18, 2021.

Raymond H. Kimble, III


35

Raymond H. Kimble, II #1000237229
JPCC Inmate Housing Area
P.O. Box 368
Gretna, LA 70054

CLERKS OFFICE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
500 POYDRAS STREET, ROOM C-151
NEW ORLEANS, LA 70130

Hasler
02/23/2021
US POSTAGE $000.51⁰
ZIP 70053
011E10672146

MAIL UNCENSORED
JEFFERSON PARISH
CORRECTIONAL CENTER NOT
RESPONSIBLE FOR CONTENT