UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND HAROLD KIMBLE, III | CIVIL ACTION |
| VERSUS | NO. 21-409 |
| PARISH OF JEFFERSON, ET AL. | SECTION "A" (2) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), including statutory frivolousness review under 28 U.S.C. § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2).  Upon review of the record, I have determined that the following matters can be resolved without a hearing, reserving the other matters for further review.

## I.    BACKGROUND

Plaintiff Raymond Harold Kimble, III, is a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana.  ECF No. 1, at 2.  Kimble filed this filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 against defendants alleging an array of constitutional violations arising from his arrest, incarceration, and state criminal proceedings.  This report will focus on absolutely immune and/or otherwise improper defendants and claims that should be initially resolved before further action is taken in this case.[1]  For clarity

---

[1] While it is appropriate in some cases for a court to gather information from the plaintiff and/or conduct a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), it is not required in all cases.  In this case, plaintiff has identified more than three dozen defendants, many of whom enjoy absolute immunity from suit or are not persons or entities subject to suit.  To streamline and clarify the record before further proceedings, including service of summons, I issue this report to recommend dismissal of those defendants and claims not appropriately brought before the court.  Nothing Kimble could provide in a § 1983 response or *Spears* hearing would alter the application of law or recommendations made in this report.  Should subsequent proceedings,

and thoroughness, I will nevertheless outline all of Kimble's claims, including those claims that will be subject to further review and are not addressed in this Report and Recommendation.

A.     **Factual Allegations in the Complaint (ECF No. 1)**

Kimble divided his *pro se* complaint into sections, with his claims grouped by defendant and factual allegations asserted against each group or defendants.  He also asserts that each defendant is named in an individual and official capacity.

1.     Claim One: Speedy Trial Violations (ECF No. 1, at 6-9)

Kimble alleges his due process and speedy trial rights are being violated by following defendants:  (a) the State of Louisiana, (b) Jefferson Parish, (c) Chief Judge Ellen Shiver Kovach of the 24th Judicial District Court for Jefferson Parish, (d) the Louisiana Supreme Court, and (e) the Chief Judge of the Louisiana Supreme Court.   *Id.* at 6-7.   Kimble claims that his constitutional rights are being violated by these defendants' continuing orders prohibiting jury trials, including his criminal trial, because of the COVID-19 pandemic.

Kimble also claims that beginning December 3, 2019, he has filed multiple speedy trial motions to no avail.  He alleges that his criminal trial was set in Jefferson Parish on December 14, 2020, moved to January 25, 2021, and then suspended without date following additional COVID-19 restrictions. *Id.* at 7-8.  Kimble asserts that defendants have known since March 16, 2020, about the pandemic and have not taken any measures to ensure that he receives due process and a timely trial.  He contends that the defendants had the authority and means to reconfigure the Jefferson Parish courthouse to accommodate jury trials during the pandemic.  *Id.* at 8.  He seeks declaratory judgment that establishing the violation of his constitutional rights, as well as injunctive relief

---

including a *Spears* hearing, warrant dismissal recommendations of any other claims or defendants as part of my statutory review, I will issue another report to address those matters.

compelling defendants from continuing to violate his rights, $250,000 in compensatory damages, and $750,000 in punitive damages. *Id*. at 8-9.

      2. <u>Claim Two: Ineffective Assistance of Counsel (ECF No. 1, at 9-11)</u>

Kimble alleges that the State of Louisiana, Jefferson Parish, "District Defender" Richard M. Thompson, appointed attorney Daniel J. Schilling, the Louisiana Public Defender Board, and the Chief Louisiana Public Defender have failed to provide him with effective representation in the protection of his constitutional right to a speedy trial. *Id*. at 9. Kimble alleges Thompson is not taking suitable measures to protect the clients of the public defender's office. He urges that he has not received effective assistance of counsel, which has resulted in violations of his rights to a speedy trial, due process, and equal protection.

Kimble claims that his appointed counsel, Schilling, requested continuances of trial dates set in August and October of 2020 and the subsequent trial dates were suspended by the court. *Id*. at 10. He also claims that Thompson would not allow Schilling to visit plaintiff in person or allow Schilling and other public defenders into the courthouse, although private counsel were allowed in the building. Thompson should have allowed indigent defenders back in the courthouse or hired private counsel for the indigent clients. He claims that he wrote to Thompson, Schilling and the Louisiana Indigent Defender Board numerous times to no avail.

Kimble seeks declaratory judgment establishing violation of his rights, injunctive relief to end the violation of his rights, $250,000 as compensatory damages, and $500,000 as punitive damages. *Id*. at 10-11.

      3. <u>Claim Three: Excessive Bail (ECF No. 1, at 11-13)</u>

Kimble alleges that he was falsely arrested in Jefferson Parish between April and August of 2016 on fourteen counts of burglary and one count of aggravated flight from an officer. *Id*. at

12.  He alleges that he has remained in custody since his false arrest in April of 2016 and his bail amount has remained the same.  He asserts that despite his numerous motions between 2016 and 2020, he has been denied a speedy trial and a reduction of his excessive bail, set at $530,000.  He asserts that defendants Jefferson Parish and Judge Raymond S. Steib of the 24th Judicial District Court have cooperated with the Jefferson Parish District Attorney to keep his bail excessively high to keep him in jail without a trial.

As relief, Kimble seeks declaratory judgment, $300 per day he remains in jail as compensatory damages, and $750 per day he remains in jail as punitive damages.  *Id*. at 12-13.

4.  <u>Claim Four: Breach of Attorney/Client Privilege and Ineffective Assistance of Counsel (ECF No. 1, at 13-15)</u>

Kimble asserts that he has been denied effective assistance of counsel by defendants Jefferson Parish, the Jefferson Parish District Attorney's Office, the Jefferson Parish Public Defender's Office, his appointed counsel Daniel J. Schilling, the chief public defender in Jefferson Parish Richard M. Thompson, and Assistant District Attorney Lindsay L. Truhe.  *Id*. at 13.  Kimble alleges that on July 30, 2020,[2] he attended a court session by Zoom video conference.  Kimble claims that Schilling asked to speak with him in a "breakout room" to protect attorney/client privilege.  *Id*.  Kimble asserts that, when he and his counsel returned to the full Zoom hearing, it appeared to him that Assistant District Attorney Truhe had been listening to his private conversation with counsel.  Kimble claims that Schilling must have allowed Truhe to listen in on the private conversation and may have communicated with her during the conversation.  *Id*. at 14.  He claims that this was a breach of the attorney/client privilege and ineffective assistance of counsel that will prejudice the rest of his criminal process.

---

[2] His pleading indicates July 30, 2021, but that date has not arrived.  I will assume he is referencing past proceedings on July 30, 2020.

As relief, Kimble seeks declaratory judgment, injunctive relief, $250,000 as compensatory damages, and $750,000 as punitive damages. *Id*. at 14-15.

    5.   <u>Claim Five: Conditions of Confinement at JPCC (ECF No. 1, at 15-16)</u>

Kimble sues defendants Jefferson Parish, the Jefferson Parish Sheriff's Office ("JPSO"), Jefferson Parish Sheriff Joseph Lopinto, Deputy Chief Sue Ellen Monfra, and Captain B. Bordelon for inadequate conditions of his confinement. *Id*. at 15. Kimble alleges that the cell design at JPCC violates his right to privacy. Specifically, he claims that the location of the toilet allows people of the opposite sex to see an inmate naked while using the toilet and showers. He also claims that officers in the control booth can see an inmate naked as he enters or exits the shower and while drying off after the shower. He asserts that the prison has a policy that prevents inmates from placing anything on the bars that would aid in privacy while on the toilet. Kimble claims that this policy allows female guards to see him using the toilet and causes him humiliation.

Kimble also claims that the male inmates are denied equal protection because male guards are not allowed to work the female prisoner area, but female officers can view male inmates. *Id*. at 16. This, he claims, is an unconstitutional Jefferson Parish policy and/or custom that has caused him irreparable injury and damage. He claims it causes forced exposure of his person to strangers of the opposite sex and is repugnant to human decency.

Kimble alleges that he filed a grievance complaint about these claims and his form was marked "refused" because no violation was articulated. *Id*. Kimble seeks declaratory judgment that his rights have been violated, injunctive relief preventing further violation, $750,000 as compensatory damages, and $1.5 million as punitive damages. *Id*.

6.  Claim Six: PREA Violation and Deliberate Indifference (ECF No. 1, at 17-21)

Kimble sues defendants Jefferson Parish, Deputy Chief Monfra, Sheriff Lopinto, Deputy S. Hayes, Deputy Thompson, CorrectHealth and two unidentified Jane Doe administrators for CorrectHealth for an alleged PREA violation and deliberate indifference to his safety and health. *Id*. at 17.

a.    PREA Violation (ECF No. 1, at 17-18)

Kimble alleges that on March 5, 2020, while preparing for his shower, Deputy Hayes approached and repeatedly asked that Kimble let him see Kimble's penis. *Id*. at 17. Kimble claims that prison rules required him to obey direct orders, no matter how offensive, so he eventually showed Hayes his penis while still in the shower. He claims that Deputy Hayes committed other sexual acts with other inmates which led to Hayes's arrest. He contends that the incident in the shower has caused him severe emotional distress and mental injury. *Id*. at 17-18. He filed a grievance complaint at the prison on March 9, 2020, and it was found to have merit. *Id*. at 18.

b.    Deliberate Indifference (ECF No. 1, at 18-20)

Kimble claims that, on March 11, 2020, after the PREA incident, Deputy Thompson escorted him to administrative segregation to get him off of the tier. *Id*. at 18. He claims that Deputy Thompson refused to get him a cart to move his two large boxes of legal records. Kimble claims he moved the two boxes one at a time into the hallway where Deputy Thompson placed him in restraints. He then ordered Kimble to grab the boxes, but Kimble was unable to do so. Kimble claims that Deputy Thompson ordered him to hold out his arms. He then threw the boxes into Kimble's outstretched arms for him to carry. The weight of the boxes, approximately 80 pounds, caused him pain and injury to his back. Kimble alleges that he asked Deputy Thompson what his problem was, and the Deputy responded the problem was that Kimble reported the PREA

violation.  *Id*.  Kimble claims that he told Deputy Thompson that the boxes were hurting his back.
He alleges that the Deputy told him that if he left the boxes, he would never get them back.

Kimble asserts that Thompson continued to deny his requests for help, so he carried the
boxes in pain.  *Id*. at 19.  He claims that, when they exited the elevator, he dropped the boxes.
Deputy Thompson took off the handcuffs, but still made Kimble carry the boxes one at a time the
rest of the way to the cell.

Kimble also claims that he filed multiple sick call requests about his continued back
stiffness and pain.  *Id*.  He claims, however, that the certified nursing assistant ("CNA") and
licensed practical nurse ("LPN") from the medical unit only gave him "minute remedies" that did
not work.  *Id*.  He also claims that he saw no real medical personnel for 90 days.  After two
examinations by the nurse practitioner, it was determined that he had "swollen nerves" in his back
that were causing pain.  When his complaint was filed, he was receiving medication for this twice
a day, but the nerves still become inflamed causing pain and swelling.  He also claims that he
occasional has shooting pain in his lower back and legs making it hard to walk.

Kimble asserts that on March 15, 2020, he filed a grievance complaint about the incident
with Deputy Thompson.  *Id*.  He received a response on May 4, 2020, indicating that his complaint
was "founded."  *Id*. at 20.  Kimble did not believe his complaint was fully investigated but his
second grievance was returned to him because the first one was "founded."  *Id*.  Kimble claims
that he also filed multiple grievance complaints about the medical care before he was finally seen
by the nurse practitioner.  *Id*.  Once he was seen for his back pain, he decided the grievance
complaints were no longer necessary.

Kimble seeks declaratory judgment that his rights were violated and injunctive relief to
prevent further violations.  *Id*.  He also seeks $25,000 as compensatory damages and $150,000 as

punitive damages for the PREA incident with Deputy Hayes. *Id*. He seeks $250,000 as compensatory damages and $150,000 as punitive damages for the deliberate indifference of Deputy Thompson. *Id*. For the delayed medical care, he seeks $150,000 as compensatory damages and $500,000 as punitive damages against CorrectHealth and the two Jane Doe administrators. *Id*. at 21. In addition, he requests $250,000 as compensatory damages and $1 million as punitive damages against Jefferson Parish, Chief Monfra, and Sheriff Lopinto in connection with these claims. *Id*. at 20-21.

7.  Claim Seven: Deliberate Indifference to His Safety (ECF No. 1, at 21-23)

Kimble alleges that defendants Jefferson Parish, the JPSO, Sheriff Lopinto, Chief Monfra, Sergeant C. Sibbernagel, and Major Edward Olsen have housed inmates of different classifications in the same unit which leads to conflict between inmates. *Id*. at 21. He claims that inmates housed in administrative segregation are allowed out of their cells for one hour per day, while the general population inmates in the same unit are locked in their cells during that time. He alleges that the administrative segregation inmates are hostile and threaten the general population inmates, throw feces into the cells, and fight while out of their cells. *Id*. at 21-22. He claims that this puts general population inmates at risk of harm. *Id*. at 22. Kimble also alleges that some deputies, either accidentally or intentionally, allow segregation inmates out of their cells while general population inmates are also out on the tier. *Id*. at 21. Kimble claims that he has filed a grievance complaint on November 22, 2019, about this and it was denied. *Id*. at 22.

He further alleges that, on August 20, 2020, he was attacked by an inmate who was allowed out of his administrative segregation cell. *Id*. As a result of the fight, Kimble claims that he suffered body aches and bruises for six days. Kimble acknowledges that he was seen immediately by medical personnel. He contends that the Jefferson Parish policy and/or custom of housing

inmates of different classifications in the same area led to his injuries and shows deliberate disregard for inmates safety.  *Id*.  In addition, Kimble asserts that his grievance complaint about the attack was determined to be "founded."  *Id*. at 22-23.

As relief, Kimble requests declaratory judgment as to the constitutional violations, injunctive relief, $10,000 in compensatory damages, and $150,000 in punitive damages.  *Id*. at 23.

### 8.   Claim Eight: Discrimination against Homosexual Inmates (ECF No. 1, at 23-27)

Kimble has sued defendants Jefferson Parish, Sgt. Anna Druhet, Captain B. Bordelon, Chief Monfra, and Sheriff Lopinto for discrimination against and harassment of homosexual inmates.  *Id*. at 23-24.  Specifically, he alleges that Sgt. Druhet is violating his due process rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments by harassing inmates on the homosexual tier.  *Id*. at 24, 25.  He claims that Sgt. Druhet conducts or has others conduct periodic searches of their cells looking for unauthorized extra mattresses or padding in mattresses.  *Id*. at 24.  He claims that these searches are only conducted on the homosexual tier.  *Id*.  He also claims that at least one search on November 10, 2020 was done after "lights out" on the homosexual tier. *Id*.  He further alleges that Sgt. Druhet issues disciplinary violation reports to the homosexual inmates after these searches.  *Id*. at 23-25.  He refers to the repeated searches shows a "campaign of harassment" by Sgt. Druhet against homosexuals.  *Id*. at 23, 25.  He filed grievance complaints about the searches that were denied because he had multiple claims and duplicate grievances.  *Id*. at 25.

Kimble also alleges that, after he filed the grievance complaints, Sgt. Druhet retaliated against him by waking him up to have his cell searched on January 14, 2021.  *Id*. at 26.  He claims that Sgt. Druhet's action was done in an attempt to stop him from continuing with the grievance complaints about the searches, a protected conduct under the First Amendment.  He believes that

the grievance process itself leads to gossip among the prison staff and results in retaliation against the inmates before the grievances are reviewed.  He asserts that grievances should not go through the mail and should be turned in directly to the administration.  He filed a grievance about this harassment and the grievance procedure itself and it was denied as a "request."  *Id*. at 26.

As relief, Kimble seeks declaratory judgment, injunctive relief, $10,000 as compensatory damages, and $100,000 as punitive damages.  *Id*. at 26-27.

9. <u>Claim Nine: Conditions of Confinement and Inadequate Medical Care (ECF No. 1, at 27-31)</u>

Kimble also has sued defendants Jefferson Parish, Chief Monfra, Sheriff Lopinto, CorrectHealth, Sergeant C. Buckelew, Lieutenant T. Berrian, Captain Bordelon, Parish Administrator/JPSO Specialist J. Denny, an administrator for CorrectHealth, a doctor/physician for CorrectHealth, Deputy Tropez, and Deputy Vicky challenging the conditions of his confinement which allegedly led to injury for which did not receive adequate medical attention.

a. December 17, 2020 Incident (ECF No. 1, at 27-29)

Kimble claims that by December 17, 2020, a leaky toilet had been reported to maintenance and numerous deputies for four months.  *Id*. at 27.  He alleges that the bathroom floor has a high-gloss paint with no texture and is slippery when wet.  Kimble claims that, on December 17, 2020, he slipped and fell as a result of the wet floor caused by the leaking toilet.  *Id*.  He states that inmate McReynolds tried to help him and the inmate fell too.  He claims that the fall caused that McReynolds to urinate on himself and on the already wet floor.  *Id*.

Kimble alleges that, when deputies arrived, none of them or the CorrectHealth staff would enter because of the wet floor.  *Id*. at 28.  He claims that Lt. Berrian kept saying that he and the other inmate were just playing around and were not hurt.  The deputies told the inmates to crawl out of the bathroom area.  McReynolds did, but Kimble claims he was in too much pain to move.

*Id*. Lt. Berrian told the deputies to get a handcuff chain to pull Kimble out of the bathroom area. Kimble claims that he told them he was in too much pain to grab the chain. *Id*. Kimble finally decided to grab the chain and was pulled out, causing him more pain. Kimble claims that he and McReynolds were soaked with water and urine. *Id*.

Kimble was brought to infirmary by wheelchair and examined by the nurse practitioner. He claims that she ordered x-rays and that Kimble be kept in the infirmary overnight for observation. He did not get a shower for about five and one-half hours because he had to wait for a male deputy to escort him to the shower. *Id*.

Kimble alleges that, on December 18, 2020, he was sent to University Medical Center for x-rays. He was found to have injuries consistent with a slip and fall. On his return, CorrectHealth refused to follow the hospital's orders or give him prescribed medications. *Id*. He claims that he has since filled out multiple sick call requests and CorrectHealth refuses to examine him. He has filed multiple grievances. *Id*. at 28-29.

> b.    December 19, 2020 Incident (ECF No. 1, at 29-30)

Kimble claims that on December 19, 2020, he and McReynolds were released from the infirmary and moved to the second floor temporary holding cell. *Id*. at 29. Deputy Young took McReynolds to the shower first, and Kimble was escorted to the shower when McReynolds returned. *Id*. Kimble claims that when he returned to the cell, the floor was wet from McReynolds shows and Kimble slipped. Kimble claims that, as he fell, he grabbed McReynolds and pulled him down too.

Deputy Young called for Nurse Vicky who was already nearby. She examined them and checked plaintiff for a concussion. Nurse Vicky determined that the inmates needed icepacks and something for pain and inflammation. Kimble claims she wrote this on a yellow tablet and said

she would be back with the items, but she never returned. *Id*.  Kimble claims he continued to request medical care but his requests were denied. *Id*.

In addition, when Deputy Young reported the incident, Deputy Tropaz told him that Kimble and McReynolds were playing and did not fall. *Id*. at 30.  Kimble claims that about 20 to 45 minutes later, he began to vomit.  He claims that Deputy Tropez was notified and she ignored the situation

Kimble claims that when he saw Nurse Vicky on December 20, 2020, he asked why she never brought the items.  She responded that she forgot. *Id*.  Kimble alleges that the facility and CorrectHealth have taken no action to help him with his injuries and refuses to see him despite his numerous sick call requests.

Kimble asserts that he has filed grievance complaints with the prison about this incident. He states that he is still awaiting responses. *Id*.

### c.    Multiple Holding Cells

Kimble alleges that following these falls, between December 19 and 21, 2020, he was placed in different holding cells that are not designated to hold inmates long term.  Despite his injuries and pain from the recent falls, he was given a mattress but had to sleep on the floor.  He claims that this caused him more pain.  He asserts that he filed grievances about this too, and is awaiting responses. *Id*.

### d.    Relief

As a result of the falls and alleged lack of medical attention, Kimble seeks declaratory judgment, injunctive relief, $250,000 in compensatory damages, and $500,000 in punitive damages. *Id*. at 31.

10. <u>Claim Ten: Inadequate Library at JPCC (ECF. No. 1, at 31-34)</u>

Kimble sues defendants Jefferson Parish, the JPSO, Sheriff Lopinto, Chief Monfra, the JPCC law library administrator, JPSO Detective David DeRoche, JPSO Detective Darren Parent, East Baton Rouge Parish, the Baton Rouge Police Department, Baton Rouge Detectives Adam Lea, Adam Alford, Danny Forbes, and Michael Blondeau, and the Chief of the Baton Rouge Police Department claiming that the law library at JPCC is inadequate. *Id*. at 31.

Kimble complains that the law library at JPCC will not assist him with any civil matters and instead advises him that it is available to assist only with criminal matters. He claims that the failure to assist him caused him to miss the prescriptive period for filing a false arrest/false imprisonment claim against the arresting officers and agencies they represent. *Id*. at 31-32. In an attempt to show that he would have had non-frivolous claims to pursue, he outlines events between April 15, 2016, and August 8, 2016, which he calls his "backward looking claims" that led to his arrests by JPSO officers and Baton Rouge officers for crimes he claims he did not commit. *Id*. at 32-34. Kimble asserts that these claims were non-frivolous and he would have had relief if he received adequate library assistance. He alleges that he has had a psychological burden and denied him his freedom for five years. *Id*. at 34.

As relief for the denial of library assistance, he seeks a declaratory judgment, injunctive relief, $5 million in compensatory damages, and $10 million in punitive damages. *Id*. at 34.

## II.    <u>STATUTORILY REQUIRED SCREENING</u>

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[3] Such complaints by prisoners must be dismissed upon review if they are frivolous and/or fail to state a claim.[4] "A federal court may dismiss a claim in forma pauperis 'if satisfied

---

[3] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998).
[4] 28 U.S.C. § 1915A(b)(1); *see also id*. §1915(e)(2)(B).

that the action is frivolous or malicious.'"[5]  A complaint is frivolous "if it lacks an arguable basis in law or fact."[6]  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[7]

A claim or complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[8] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[9]  A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[10]  "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[11]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."[12]  A prisoner's complaint that fails to state a claim may be dismissed *sua sponte* at any time.[13]

---

[5] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).

[6] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

[7] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).

[8] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992)

[9] *Moore*, 976 F.2d at 270.

[10] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation omitted).

[11] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[12] *Moore*, 976 F.2d at 269.

[13] 28 U.S.C. §§ 1915(e)(2) & 1915A; 42 U.S.C. § 1997e(c)(1).

## II.    LAW AND ANALYSIS

### A.    Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[14]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[15]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[16] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[17]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[18] In other words, a plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[19]

---

[14] 42 U.S.C. § 1983.

[15] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[16] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[17] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[18] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

[19] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

**B.**      **Eleventh Amendment Immunity for the State of Louisiana and its Agencies**

In this case, plaintiff has identified several defendants against whom he cannot assert a §

1983 claim.  The following defendants and claims should thus be dismissed with prejudice under

28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)-(b), and 42 U.S.C. § 1997e(c)(1) as frivolous, for

seeking relief against an immune defendants, and otherwise for failure state a claim for which

relief can be granted under § 1983, even under the broadest reading of his complaint.[20]

1.   Suit for Monetary Relief

Kimble has named the State of Louisiana and the Louisiana Public Defender Board as

defendants in this matter in connection with his speedy trial and ineffective assistance of counsel

claims (claims #1 and #2).  The Louisiana Public Defender Board is a state agency.[21]

Under the Eleventh Amendment, "[c]itizens may not bring suit against a state or any

instrumentality thereof without the state's consent."[22]  "This rule extends to 'arms of the state,'

and to a state's 'officials acting in their official capacities.'"[23]  The United States Fifth Circuit

Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts.  When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity.  By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  See LA. REV. STAT. ANN. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not

---

[20] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore*, 30 F.3d at 620.

[21] LA. REV. STAT. ANN. § 15:146(A)(1).

[22] *Rodriguez v. Tex. Commn. on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000) (addressing U.S. CONST. amend. XI).

[23] *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of St. Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 71, (1989)).

explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.[24]

While a State may expressly waive this Eleventh Amendment sovereign immunity, Louisiana has by statute declined to do so.[25]  Louisiana and its agencies thus enjoy Eleventh Amendment immunity from suit for monetary damages.[26]

For these reasons, the Court is without jurisdiction to hear the plaintiff's claims for monetary relief against the State of Louisiana and the Louisiana Public Defender Board.[27] Kimble's claims against the Board also fail because state agencies are not "persons" subject to suit under § 1983.[28]

Accordingly, Kimble's claims seeking monetary relief against the State of Louisiana and the Louisiana Public Defender Board should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and/or for failure to state a claim for which relief can be granted because the court lacks jurisdiction and his claims seek relief against immune defendants.

2.  <u>Suit for Declaratory and Prospective Injunctive Relief</u>

Kimble also seeks declaratory and prospective injunctive relief against the State and the Louisiana Public Defender Board related to his alleged ineffective assistance of counsel and the COVID-19 policies of the state court and local public defender's office (claim #2).  However,

---

[24] *Cozzo v. Tangipahoa Parish Council-President Govt.*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999); *McGuire v. Lafourche Parish Work-Release Facility*, No. 09-6755, 2009 WL 4891914, at *3-4 (E.D. La. Dec. 4, 2009).

[25] *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways*, 780 F.2d 268, 1271-73 (5th Cir. 1986).

[26] *Pennhurst State School v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185–86 (5th Cir. 1986).

[27] *See Warnock v. Pecos County, Tx.*, 88 F.3d 341, 343 (5th Cir. 1996).

[28] *Will*, 491 U.S. at 66; *Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006); *McGuire*, 2009 WL 4891914, at *3; *Levy v. Office of Legislative Auditor*, 362 F. Supp. 2d 729, 735 (M.D. La. 2005); *Goins v. Louisiana*, No. 04-1159, 2004 WL 2694899, at *2 (E.D. La. Nov. 22, 2004).

Kimble cannot pursue injunctive relief against the State or a state agency, except by naming the appropriate state official in an official capacity in connection with his claim.[29]

The Supreme Court has recognized an exception to Eleventh Amendment sovereign immunity when a plaintiff brings suit "for injunctive or declaratory relief against individual state officials acting in violation of federal law."[30]  "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" against a state actor in an official capacity.[31]  Under the principles in *Ex Parte Young*, "a state official in his or her official capacity, when sued for *injunctive* relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[32]

In his lengthy complaint, Kimble refers to the John Doe "Chief Louisiana Public Defender," in his individual and official capacity, as a person responsible for assuring that he received effective legal assistance in his criminal proceeding.  Assuming Kimble can further identify this person and he is someone other than Richard M. Thompson, the Chief Public Defender in the 24th Judicial District whom Kimble has already named as a defendant in both his individual and official capacities, not all state officials sued in their official capacities can be sued in every instance under § 1983 for prospective injunctive relief under *Ex Parte Young*.  "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a

---

[29] *See Saltz v. Tenn. Dept. of Empl't Sec.*, 976 F.2d 966, 968 (5th Cir.1992); *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988).
[30] *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex parte Young*, 209 U.S. at 123).
[31] *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).
[32] (emphasis added) *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1995)).

representative of the state, and thereby attempting to make the state a party.'"[33]  In other words,

when a state actor is not statutorily tasked with enforcement of the issues involved in the suit, the

defendant is not a proper defendant under the *Ex Parte Young* exception to Eleventh Amendment

immunity.[34]

In Louisiana, the duties and functions relating to the delivery of indigent defender services

fall on the "the judicial district indigent defender fund under the management of the district public

defender and the district public defender office . . .."[35]  The "district public defender office" is

defined as the "office of a district public defender as provided for in R.S. 15:161."[36]  In this case,

the selection of qualified local public defenders under § 15:161 fell to the public defender for the

24th Judicial District Court in Jefferson Parish, not the state "chief" public defender or the

Louisiana Public Defender Board.  Again, Kimble has already named Richard M. Thompson, the

Chief Public Defender in the 24th Judicial District, as a defendant in both his individual and official

capacities as the person responsible for appointing and monitoring the actions of his appointed

counsel.  The Chief Louisiana Public Defender was not the state actor responsible for appointing

an attorney to represent Kimble in his Jefferson Parish criminal prosecution.

For this reason, Kimble's claims for declaratory and injunctive relief do not qualify for the

*Ex Parte Young* exception and his claims for declaratory and prospective injunctive relief against

the State of Louisiana and the Louisiana Public Defender Board should also be dismissed pursuant

to 28 U.S.C. § 1915 and § 1915A as frivolous and/or for failure to state a claim for which relief

---

[33] *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. at 157).
[34] *Paxton*, 943 F.3d at 998; *see also Morris v. Livingston*, 739 F.3d 740, 745-46 (5th Cir. 2014) (Governor of Texas was not responsible for the enforcement of statute requiring inmates to pay a health care services fee for visits to health care provider and was therefore improper defendant and immune from suit seeking prospective injunctive relief).
[35] La. Public Defender Act of 2007, Acts 2007, No. 307, §14.
[36] LA. REV. STAT. ANN. § 15:143.

can be granted.  This court lacks jurisdiction over his claims seeking relief against immune defendants.

3.  <u>State Sued on Behalf of State Court Judicial Officers</u>

Kimble also has asserted claims against, or seeks to hold jointly liable, the State of Louisiana for the actions of the multiple state judicial officers named as defendants in their individual and official capacities.  For the reasons addressed in the next section of my report, Kimble cannot seek relief against the state judges in any capacity because of the doctrine of absolute judicial immunity.  His claims for monetary, declaratory, and injunctive against the State of Louisiana in connection with the actions of these state judges are barred by the Eleventh Amendment and barred by absolute judicial immunity.  The claims against the State should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A.

**C.    Absolute Judicial Immunity**

Kimble seeks declaratory, monetary, and injunctive relief against Chief Judge Kovach and the Chief Justice of the Louisiana Supreme Court in connection with his claims that he has been denied a speedy trial as a result of limited access to the state courthouses and postponement of criminal jury trials during the on-going COVID-19 pandemic (claim #1).  Kimble also sued Judge Steib for declaratory, monetary, and injunctive relief for his alleged setting of excessive bail and denial of Kimble's related motions for reduction of bail (claim #3).

These judicial officers enjoy absolute judicial immunity for acts performed within their jurisdictional authority.[37]  In addition, the Federal Courts Improvement Act of 1996 ("FCIA") amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

---

[37] *See Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996).

declaratory decree was violated or declaratory relief is unavailable."[38]   Thus, injunctive relief not

based on violation of a declaratory decree is unavailable against a judge in his or her role as a

judicial officer, whether individually or in an official capacity.[39]

"A judge will not be deprived of immunity because the action he took was in error, was

done maliciously, or was in excess of his authority; rather, he will be subject to liability only when

he has acted in the 'clear absence of all jurisdiction."[40]   "Disagreeing with a judge's actions does

not justify depriving that judge of his or her immunity."[41]   Instead, absolute judicial immunity is

overcome in only two narrow circumstances.[42]   First, a judge is not immune from liability for non-

judicial actions, i.e. actions outside of the judge's judicial role.[43]   Second a judge is not immune

for actions, though judicial in nature, taken in complete absence of all jurisdiction.[44]

To determine whether a judge's actions were "judicial in nature," a court may consider

these factors:

(1)   whether the precise act complained of is a normal judicial function;
(2)   whether the acts occurred in the courtroom or appropriate adjunct spaces
        such as the judge's chambers;
(3)   whether the controversy centered around a case pending before the court;
        and

---

[38] 42 U.S.C. § 1983.

[39] *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir.2005) (recognizing that the FCIA of 1996 precludes injunctive relief for suits against a judicial officer acting in a judicial capacity); *Guerin v. Higgins*, 8 F. App'x 31, 32 (2d Cir. Apr. 11, 2001) (unpublished); *Nollet v. Justices of the Trial Ct. of the Commonwealth of Mass.*, 83 F.Supp.2d 204, 210 (D. Mass. 2000); accord *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to § 1983 limited relief available from a judge to declaratory relief); *cf. LaBranche v. Becnel*, 559 F. App'x 290 (5th Cir. 2014) (recognizing that even when judicial immunity does not bar claims for injunctive relief, relief can be granted because federal courts have no authority to direct state courts or their judicial officers in the performance of their duties) (citing *Moye v. Clerk, DeKalb County Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973)).

[40] *Mays*, 97 F.3d at 111; *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant.") (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991)).

[41] *Greenlee v. U.S. Dist. Court*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump v. Sparkman*, 435 U.S. 349, 363 (1978)).

[42] *Mireles*, 502 U.S. at 11-12.

[43] *Id*.

[44] *Id*.

(4)   whether the acts arose directly out of a visit to the judge in an official capacity.[45]

In sum, "[a] judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'"[46]

Kimble does not complain of any actions taken by Chief Judge Kovach, the Chief Justice of the Louisiana Supreme Court, or Judge Steib that were non-judicial in nature or taken in clear absence of all jurisdiction.  He instead merely disagrees with the judicial officers' orders and actions taken in direct connection with his criminal case or in the management of court proceedings based on their respective positions as controlling judicial officers.  The judges' decisions regarding when and how to hold the proceedings before them are inextricably intertwined with their official functions and duties as presiding officers.

Kimble's claims seeking monetary relief and prospective injunctive relief against these judicial officers should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and/or for failure to state a claim for which relief can be granted because for seeking relief against immune defendants and relief otherwise not available under § 1983.

D.   **Improper Defendants**

Kimble has named several defendants that do not qualify as persons or entities subject to suit under § 1983.  As noted above, § 1983 claims may be asserted against "persons" as the statute and case law define that term.  This generally includes municipalities and other, local governing bodies, their employees, and other state actors in their individual capacities.[47]  These persons also must have the capacity to be sued in federal court under FED. R. CIV. PROC. 17(b).  A party's

---

[45] *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)).

[46] *Boyd*, 31 F.3d at 285 (quoting *Mireles*, 502 U.S. at 12).

[47] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Will*, 491 U.S. at 71.

capacity is determined by reference to the law of the state in which the district court sits.[48]  To possess capacity under Louisiana law, an entity must qualify as a "juridical person," which is defined as "an entity to which the law attributes personality, such as a corporation or partnership."[49]

The following entities identified by Kimble as defendants are not entities under this framework subject to suit and do not qualify as persons for purposes of § 1983.  The claims against these entities are frivolous and otherwise fail to state a claim for which relief can be granted.

### 1. Louisiana Supreme Court

Kimble identified the Louisiana Supreme Court as a defendant apparently in connection with his claims of COVID-19 delays in his criminal proceedings.  He does not indicate that he had any proceedings before that court.  Nevertheless, it has long been recognized that "state courts are not considered 'persons' within the meaning of § 1983."[50]  The Louisiana Supreme Court also is not an entity with juridical capacity, *i.e.* a suable entity, under Louisiana law and is not a proper defendant under Fed. R. Civ. Proc. 17(b)(2).[51]  Even if the Louisiana Supreme Court could be sued, claims against the court, as a division or agency of the State, would barred by the Eleventh

---

[48] FED. R. CIV. PROC. 17.

[49] LA. CIV. CODE art. 24.

[50] *Moity v. La. St. Bar Assoc.*, 414 F. Supp. 180, 182 (E.D. La.), *aff'd*, 537 F.2d 1141 (5th Cir. 1976); *Dunn v. Louisiana*, No. 10-4519, 2011 WL 446651, at *3 (E.D. La. Jan. 20, 2011), *report and recommendation adopted*, 2011 WL 445684, at *1 (E.D. La. Feb. 3, 2011); *Thompson v. St. Bernard Par. Ct.*, No. 09-4465, 2010 WL 110797, at *3 (E.D. La. Jan. 11, 2010); *Stewart v. Crim. Dist. Ct. of Louisiana*, No. 08-3731, 2008 WL 4758610, at *2 (E.D. La. Oct. 30, 2008); *Knight v. Guste*, No. 07-1124, 2007 WL 1248039, at *3 (E.D. La. Apr. 27, 2007).

[51] *See Griffith v. Louisiana*, 808 F. Supp. 2d 926, 934 (E.D. La. 2011) ("[A] Louisiana state court does not qualify as a juridical person and thus lacks the capacity to be sued."); *Durden v. Bryson*, No. 17-214, 2017 WL 4855437, at *2 (W.D. La. Sep. 26, 2017), *report and recommendation adopted by* 2017 WL 4847783, at *1 (W.D. La. Oct. 25, 2017); *Chisom v. Edwards*, No. 86-4075, 2012 WL 13005340, at *7-9 (E.D. La. Aug. 6, 2012); *Swift v. Juvenile Court*, No. 2009-1182, 2010 WL 786031 (La. App. 3d Cir. Mar. 10, 2010) (finding "that the law does not grant a juvenile court the procedural capacity to sue or be sued.").

Amendment for the reasons addressed above.[52]  Kimble's claims against the Louisiana Supreme Court are frivolous and otherwise fail to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A.

### 2. Jefferson Parish Sheriff's Office

Kimble named the Jefferson Parish Sheriff's Office as a defendant in connection with the conditions of his confinement at the JPCC (claims #5, #7, and #10).  "However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action."[53]  The State of Louisiana grants no such legal status to any law enforcement office or department.[54]  The Sheriff's Office also is not a "person" for purposes of § 1983 liability.[55]

Because the Jefferson Parish Sheriff's Office is not a person or suable entity to be held liable under § 1983, the claims against it must be dismissed as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

### 3. 24th Judicial Public Defender's Office

Kimble named the 24th Judicial Public Defender's Office as a defendant because his appointed attorney is connected with that office.  However, a public defender's office is not a

---

[52] *See, e.g., Dunn*, 2011 WL 446651, at *3; *Wilkerson v. 17th Jud. Dist. Ct.*, No. 08-1196, 2009 WL 249737, at *3-4 (E.D. La. Jan. 30, 2009); *Rackley v. Louisiana*, No. 07-504, 2007 WL 1792524, at *3 (E.D. La. Jun. 21, 2007); *see also Jefferson v. La. St. Sup. Ct.*, No. 01-31275, 2002 WL 1973897 (5th Cir. Aug. 9, 2002) ("The Eleventh Amendment clearly bars Jefferson's § 1983 claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government.") (citing *Southern Christian Leadership Conference v. Sup. Ct. of State of La.*, 252 F.3d 781, 783 n.2 (5th Cir. 2001)).

[53] *Francis v. Terrebonne Parish Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo*, 279 F.3d at 283; *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing LA. REV. STAT. ANN. § 33:361 and *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 909 (E.D. La. 2001)); *Fitch v. Terrebonne Parish Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006).

[54] *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. App. 3d Cir. 1977).

[55] *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993).

person capable of being sued under § 1983.[56]  Accordingly, Kimble's civil rights claim against the 24th Judicial Public Defender's Office is frivolous and otherwise fails to state a claim for which relief can be granted.

> ### 4.   24th Judicial District Attorney's Office

Kimble also identifies the 24th Judicial District Attorney's Office as a defendant as it relates to his ongoing criminal prosecution in Jefferson Parish.  A district attorney's office is not an entity that can be sued under Louisiana law, nor is it a person capable of being sued under § 1983.[57]  Thus, Kimble's claims against the 24th Judicial (Jefferson Parish) District Attorney's Office must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

## E.   **SUMMARY**

Kimble has sued the State of Louisiana and the Louisiana Public Defender Board.  These defendants enjoy Eleventh Amendment Immunity from suit for monetary damages and there is no exception under *Ex Parte Young* to allow Kimble to proceed with his claims for declaratory and prospective injunctive relief.  Similarly, the named judicial officers (Chief Judge Kovach, the Chief Justice of the Louisiana Supreme Court, and Judge Steib) enjoy absolute judicial immunity from Kimble's suit.  Finally, Kimble has named improper defendants (the Louisiana Supreme Court, the Jefferson Parish Sheriff's Office, the 24th Judicial Public Defender Board, and the 24th

---

[56] *See Montgomery v. City of Lake Charles*, No. 10-1297, 2011 WL 887910, at *2 (W.D. La. Mar. 9, 2011)); *Burge v. Parish of St. Tammany*, No. 91-2321, 1997 WL 10243, at *8 (E.D. La. Jan. 8, 1997); *Zapata v. Public Defenders Office*, 252 F. App'x 237, 2007 WL 3104864, at *2 (10th Cir. 2007) (public defender's office is not a "person" amenable to suit under § 1983); *accord Amir-Sharif v. Dallas County Public Defenders Office*, 233 F. App'x 364 (5th Cir. 2007) (court appointed counsel and the Public Defender's Office are not state actors for § 1983 purposes).

[57] *Burge*, 1997 WL 10243, at *8; *see Collins v. Drake*, No. 07-8220, 2009 WL 653053, at *5 (E.D. La. Jan. 30, 2009) ("Louisiana law does not recognize a district attorney's office as a juridical entity, although a claim may be brought against a district attorney in his official capacity."), *report and recommendation adopted as modified on other grounds by* 2009 WL 653047, at 1 (E.D. La. Mar. 12, 2009).

Judicial District Attorney's Office) against whom he cannot proceed under § 1983. Dismissal of Kimble's claims against these defendants is proper under 28 U.S.C. § 1915 and § 1915A as the claims are frivolous, seek relief against immune defendants, and/or fail to state a claim for which relief can be granted.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that Kimble's § 1983 claims against the State of Louisiana, the Louisiana Public Defender Board, Chief Judge Ellen Shiver Kovach, the Chief Justice of the Louisiana Supreme Court, Judge Raymond S. Steib, Jr., the Jefferson Parish Sheriff's Office, the 24th Judicial Public Defender's Office, and the 24th Judicial District Attorney's Office be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous, for seeking relief against an immune defendant, and/or for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that the Kimble's other claims against the remaining defendants remain referred to the undersigned Magistrate Judge for further proceedings consistent with the automatic referral under Local Rule 73.2(A).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[58]

---

[58]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).

New Orleans, Louisiana, this _____8th_____ day of April, 2021.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE