UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND HAROLD KIMBLE, III | CIVIL ACTION |
| VERSUS | NO. 21-409 |
| PARISH OF JEFFERSON, ET AL. | SECTION "A" (2) |

## ORDER AND REASONS

Plaintiff Raymond Harold Kimble, III, has filed a Motion for Leave to file an Amended Complaint (ECF No. 99) seeking to add two new claims to his *pro se* and *in forma pauperis* prisoner civil rights complaint. Specifically, he seeks to include a new claim regarding the insufficient staffing and a new claims regarding a lack of COVID-19 protocols at the Jefferson Parish Correctional Center ("JPCC") to be brought against defendants Jefferson Parish, Sheriff Joseph Lopinto, III, and Chief Sue Ellen Monfra. *Id*. at 1-4.

### I.   RELEVANT BACKGROUND

Kimble filed his original complaint under 42 U.S.C. § 1983 against more than three dozen defendants alleging an array of constitutional violations at JPCC related to inadequate medical care, sexual assault and retaliation, bias against homosexual inmates, and an inadequate law library. ECF No. 1. He also asserted claims challenging his arrests, detention, and pending state criminal proceedings in Baton Rouge and Jefferson Parish.[1] *Id*. Kimble has not previously asserted claims in this case related to insufficient staffing or the COVID-19 protocols at the JPCC.

### III.   KIMBLE'S MOTION

Kimble seeks to amend his complaint to add new claims against defendants Jefferson Parish, Sheriff Lopinto and Chief Monfra alleging that JPCC lacks proper COVID-19 protocols,

---

[1] I recently issued a Report and Recommendation (ECF No. 104) recommending dismissal of a number of Kimble's claims based on my statutory frivolousness review under 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e. ECF No. 104.

screening, and isolation practices, and that the prison is understaffed which could endanger inmates. ECF No. 99, at 1-4; ECF No. 99-1, at 1-4. He contends that, by these actions, the JPCC administrators have demonstrated indifference to the health and safety of the general population. ECF No. 99-1, at 1-2. Kimble also asserts that "numerous inmates" have filed administrative grievances with the prison administration to no avail. ECF No. 99, at 2, 4. With regard to both claims, he seeks a jury trial, reimbursement of costs, declaratory judgment that the defendants have violated his rights and the rights of a purported class of inmates, a temporary restraining order, permanent injunctive relief, and an award of nominal damages of $1.00 for each class member. *Id*. at 2-3, 4.

### A. Claim Regarding COVID-19 Protocols

Kimble's proposed amendments allege that the JPCC officials have mixed recently arrested detainees into the general population without testing them for COVID-19. *Id*., ¶A, at 2; ECF No. 99-1, ¶A, at 2. Kimble asserts that the temperature checks would not reveal asymptomatic individuals who could spread the virus. ECF No. 99, ¶A, at 2. He also complains that there is no quarantine process before these new arrestees are mixed with general population. He also contends that JPCC officials mix inmates from "hotspot" areas, used for COVID-19 quarantine, with inmates from other housing units without requiring a fourteen day quarantine. *Id*.; ECF No. 99-1, ¶A, at 2. He further states that, in the past, they also mixed inmates who are positive for COVID-19 with those who are not. ECF No. 99, ¶A, at 2; ECF No. 99-1, ¶A, at 2. Finally, Kimble claims that the air-condition system at JPCC spreads the COVID-19 virus which places all inmates at risk. ECF No. 99, ¶A, at 2. He also claims that the JPCC officials have had the opportunity to put safety measures in place but have failed in their obligation to protect the inmates from harm. *Id*.

### B. Claim Regarding Understaffing at JPCC

Kimble seeks to add a second claim alleging that the jail is short of deputies to staff the jail which is "causing the facility to improperly run/function." *Id*., ¶B, at 3. He asserts that, during normal staffing, there is one deputy per housing unit in the north wing of the facility. *Id*. Because of understaffing, there is one deputy assigned to monitor two to four housing units. *Id*. He claims that this leaves inmates in cells for hours without being watched, attended, or provided emergency help. *Id*.; ECF No. 99-1, ¶B, at 2. He alleges that the deputy may be at times 75 yards away and not able to hear or observe the housing unit. ECF No. 99, ¶B, at 3; ECF No. 99-1, ¶B, at 2. He asserts that an inmate recently hung himself in a suicide attempt while the assigned deputy was monitoring three housing units. ECF No. 99, ¶B, at 3.

Kimble also asserts that the jail is forcing deputies to work "forced overtime" of 16 hours per day for a series of seven to eight days. He claims that the deputies are exhausted and tired, so they are sleeping in the security booth rather than watching the inmates. *Id*.; ECF No. 99-1, ¶B, at 3-4. Kimble claims that this is putting inmates at risk without reasonable safety measures and the JPCC administration refuses to correct it. ECF No. 99, ¶B, at 4. He suggests that the administration could take action to downsize the facility until a proper number of deputies are available to meet the duty to provide reasonable safety to inmates. *Id*.

### III. STANDARDS FOR AMENDING COMPLAINTS

Amendments and supplements to pleadings are governed by FED. R. CIV. PROC. 15(a), which states that leave to amend "shall be freely given when justice so requires." District courts have discretion to determine whether justice requires granting leave.[2] "A district court must

---

[2] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir. 1981).

possess a 'substantial reason' to deny a request for leave to amend, but 'leave to amend is by no means automatic.'"[3] The factors "includ[e] undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[4] An amendment is deemed to be futile if it would be dismissed under FED. R. CIV. PROC. 12(b)(6).[5]

## IV. DISCUSSION

Kimble's original complaint in this action is what is often referred to by the courts as an "everything but the kitchen sink" complaint asserting claims of alleged constitutional violations in different facets of his prison life and state criminal proceedings against various and oft unrelated sets of defendants.[6] Although his motion to amend is not per se dilatory in terms of time, filed less than a year after the original complaint, it represents another effort to combine in this proceeding more claims that are factually unrelated to any other claim before the court.

Federal courts are called to be wary of prisoners who attempt to combine unrelated claims into one suit as this practice strikes at the heart of the Prison Litigation Reform Act of 1996 ("PLRA"), at 28 U.S.C. § 1915, *et seq.*, which makes prisoners ultimately accountable for filing fees in every case, even pauper cases. Because of the PLRA's fee payment schedule, inmates often attempt to include numerous claims and defendants in one complaint to avoid owing multiple filing fees. However, it is because of the PLRA's fee schedule that the courts are insistent that

---

[3] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987 (5th Cir. 2005) (citing *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002); *Halbert v. City of Cherman*, 33 F.3d 526, 529 (5th Cir. 1994)).
[4] *Id*. (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).
[5] *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[6] A "kitchen-sink" complaint, like Kimble's complaint, inappropriately "brings every conceivable claim against every conceivable defendant." *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

"[u]nrelated claims against different defendants belong in different suits."[7]  Indeed, the Fifth Circuit discourages the compiling of unrelated claims by prisoners, noting that the court "doubt[s] that Congress intended that §1915(g) could be so facilely circumvented by the creative joinder of actions."[8]  In addition, courts have held that combining multiple lawsuits into one, as Kimble has already done and seeks now to expand, is violative of the federal rules.[9]  The court cannot allow Kimble to continue to exacerbate the inclusion and improper joinder of unrelated claims into this civil action.  Kimble can choose to pursue his proposed new claims in a new lawsuit.

Additionally, the court has completed its statutory frivolousness review under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e in this case and has recommended dismissal of a number of claims urged by Kimble against multiple defendants, including Jefferson Parish, Sheriff Lopinto, and Chief Monfra.  ECF No. 104; *see also* ECF Nos. 5, 87 (dismissing claims against other improper and immune defendants).  Jefferson Parish and other defendants have pending motions to dismiss regarding some of Kimble's remaining claims.  ECF No. 96.  Considering the remaining claims, and those claims and defendants that have already been dismissed, Kimble's proposed amended claims are distinct and unrelated to the claims brought in this lawsuit.  Therefore, the amendments would be prejudicial to the defendants and to the orderly progress of the case in the court.  Accordingly,

---

[7] *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).
[8] *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Bonner v. Bosworth*, No. 10-CV-2150, 2010 WL 11534476, at *1-2 (N.D. Tex. Nov. 30, 2010) ("Requiring parties to assert unrelated claims against different defendants in separate complaints avoids unduly cumbersome litigation, and in the context of prisoner litigation, ensures that prisoners pay the required filing fees under the Prison Litigation Reform Act."), *report and recommendation adopted by* 2011 WL 13199228, at *1 (N.D. Tex. May 2, 2011); *Bangmon v. Lance*, No. 17-CV-138, 2018 WL 496956, at *2 (S.D. Tex. Jan. 22, 2018) ("The Fifth Circuit has discouraged the 'creative joinder of actions' by prisoners attempting to circumvent the fee-payment and three-strikes provisions of the Prison Litigation Reform Act.") (citing *Patton*, 136 F.3d at 464).
[9] *See Bangmon*, 2018 WL 496956, at *2 ("An attempt to file multiple lawsuits in one complaint violates Federal Rules of Civil Procedure 18 and 20, which set out the limits on joinder of claims and parties.").

**IT IS ORDERED** that Kimble's Motion for Leave to file an Amended Complaint (ECF No. 99) is **DENIED**.

New Orleans, Louisiana, this  20th  day of December, 2021.

*[signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE