UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND HAROLD KIMBLE, III | CIVIL ACTION |
| VERSUS | NO. 21-409 |
| PARISH OF JEFFERSON, ET AL. | SECTION "A" (2) |

## REPORT AND RECOMMENDATION

Defendant Parish of Jefferson ("Jefferson Parish") filed a Motion to Dismiss seeking dismissal of plaintiff Raymond Harold Kimble, III's complaint pursuant to 28 U.S.C. § 1915(e)(2), 42 U.S.C. § 1997e(c)(1), and FED. R. CIV. PROC. 12(b)(6).  ECF No. 96.  Kimble has opposed the motion.  ECF No. 108.  The motion was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  Upon review of the record, the court has determined that the motion can be disposed of without an evidentiary hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Kimble was a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") when he filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983.  ECF No. 1, at 2.  Kimble asserted claims against numerous defendants, including Jefferson Parish, alleging various constitutional violations arising from his arrest and incarceration in Jefferson Parish Correctional Center ("JPCC").  *Id.*  Defendant Jefferson Parish filed its Motion to Dismiss before the Court could complete its frivolousness review of Kimble's original complaint and various amendments.  As a result Jefferson Parish includes discussion of all of Kimble's original claims, including claims one through four and part of claim ten related to his arrests and incarceration

which have since been dismissed in the Court's frivolousness review.  ECF Nos. 115, 123, 124.

The court therefore focuses on Kimble's remaining relevant claims against Jefferson Parish:

(1)     Claim Five challenging the conditions of confinement at the JPCC, including denial of privacy rights because male and female inmates can be viewed while using bathrooms and showers by guards of the opposite sex urged against defendants Jefferson Parish, Sheriff Joseph Lopinto, Chief Sue Ellen Monfra, and Captain B. Bordelon;[1]

(2)     Claims Six only as to the claims of inadequate medical care asserted urged against Jefferson Parish, Chief Monfra, Sheriff Lopinto, CorrectHealth Jefferson, LLC ("CHJ"), and two Jane Doe medical administrators;[2]

(3)     Claim Seven asserting deliberate indifference to Kimble's protection urged against Jefferson Parish, Sheriff Lopinto, Chief Monfra, Sergeant C. Sibbernagel, and Major Edward Olsen;[3]

(4)     Claim Eight asserting discrimination and harassment against homosexual inmates, including Kimble, urged against Jefferson Parish, Sergeant Anna Druhet, Captain B. Bordelon, Chief Monfra, and Sheriff Lopinto;

(5)     Claim Nine challenging the conditions of confinement, a slip and fall incident, and inadequate medical care for a leg injury at JPCC urged against Jefferson Parish, Chief Monfra, Sheriff Lopinto, CHJ, Sergeant C. Buckelew, Lieutenant T. Berrian, Captain Bordelon, Specialist J. Denny, unidentified administrator and doctor for CHJ, Deputy Tropez, Deputy Vicky, Deputy S. Young, Deputy G. Brown, and Deputy Washington;[4] and

(6)     Claim Ten only as to the claims of denial of access to the courts and inadequate law library asserted against Jefferson Parish, Sheriff Lopinto, Chief Monfra, and the law library administrator.[5]

**A.     <u>Factual Allegations</u>**

   **1.   Claim Five: Conditions of Confinement at JPCC (<u>ECF No. 1, at 15-16</u>; <u>ECF No. 119, at 4</u>))**

Kimble sued defendants Jefferson Parish, the Jefferson Parish Sheriff's Office ("JPSO"),

Sheriff Lopinto, Deputy Chief Monfra, and Captain Bordelon for inadequate conditions of his

---

[1] ECF No. 1, at 15-16; ECF No. 119, at 4.
[2] ECF No. 1, at 17-18.
[3] *Id.* at 21-23.
[4] *Id.* at 27-31; ECF No. 119, at 7-8.
[5] ECF No. 1, at 31-34.

confinement. *Id.* at 15. Kimble alleges that the cell design at JPCC violates his right to privacy. Specifically, he claims that the location of the toilet allows people of the opposite sex to see an inmate naked while using the toilet and showers. He also claims that officers in the control booth can see an inmate naked as he enters or exits the shower and while drying off after the shower. He asserts that the prison has a policy that prevents inmates from placing anything on the bars that would aid in privacy while on the toilet. Kimble claims that this policy allows female guards to see him using the toilet and causes him humiliation.

Kimble also claims that the male inmates are denied equal protection because male guards are not allowed to work the female prisoner area, but female officers can view male inmates. *Id.* at 16. This, he claims, is an unconstitutional Jefferson Parish policy and/or custom that has caused him irreparable injury and damage. He claims it causes forced exposure of his person to strangers of the opposite sex and is repugnant to human decency.

In his amended claim, he also urges that female inmates are similarly denied their rights to privacy in their toilet and shower areas. He notes, however, that the female inmates are given the advantage of one blacked out window at the back of the housing unit allowing female inmates some privacy from approaching male guards. ECF No. 119, at 4.

Kimble alleges that he filed a grievance complaint about these claims and his form was marked "refused" because no violation was articulated. ECF No. 1, at 16. Kimble seeks declaratory judgment that his rights have been violated, injunctive relief preventing further violation, $750,000 as compensatory damages, and $1.5 million as punitive damages. *Id.*

**2.  Claim Six: PREA Violation and Deliberate Indifference (ECF No. 1, at 17-21; ECF No. 106, at 2-3)**

Kimble sues defendants Jefferson Parish, Deputy Chief Monfra, Sheriff Lopinto, Deputy S. Hayes, Deputy Thompson, CHJ, and two unidentified Jane Doe administrators for CHJ for an alleged PREA violation and deliberate indifference to his physical safety and health. *Id*. at 17.

a.  PREA Violation (ECF No. 1, at 17-18)

Kimble alleges that on March 5, 2020, while preparing for his shower, Deputy Hayes approached and repeatedly asked that Kimble let him see Kimble's penis. *Id*. at 17.  Kimble claims that prison rules required him to obey direct orders, no matter how offensive, so he eventually showed Hayes his penis while still in the shower.  He claims that Deputy Hayes committed other sexual acts with other inmates which led to Hayes's arrest.  He contends that the incident in the shower has caused him severe emotional distress and mental injury.  *Id*. at 17-18.  He filed a grievance complaint at the prison on March 9, 2020, and it was found to have merit.  *Id*. at 18.

b.  Deliberate Indifference (ECF No. 1, at 18-20)

Kimble claims that, on March 11, 2020, after the alleged PREA incident, Deputy Thompson escorted him to administrative segregation to get him off of the tier.  ECF No. 1, at 18. He claims that Deputy Thompson refused to get him a cart to move his two large boxes of legal records.  Kimble claims he moved the two boxes one at a time into the hallway where Deputy Thompson placed him in restraints.  He then ordered Kimble to grab the boxes, but Kimble was unable to do so.  Kimble claims that Deputy Thompson ordered him to hold out his arms.  He then threw the boxes into Kimble's outstretched arms for him to carry.  The weight of the boxes, approximately 80 pounds, caused him pain and injury to his back.  Kimble alleges that he asked Deputy Thompson what his problem was, and the Deputy responded the problem was that Kimble reported the PREA violation.  *Id*.  Kimble claims that he told Deputy Thompson that the boxes

4

were hurting his back.  He alleges that the Deputy told him that if he left the boxes, he would never get them back.

Kimble asserts that Thompson continued to deny his requests for help, so he carried the boxes in pain.  *Id*. at 19.  He claims that, when they exited the elevator, he dropped the boxes. Deputy Thompson took off the handcuffs, but still made Kimble carry the boxes one at a time the rest of the way to the cell.

Kimble also claims that he filed multiple sick call requests about his continued back stiffness and pain.  *Id*.  He claims, however, that the certified nursing assistant ("CNA") and licensed practical nurse ("LPN") from the medical unit only gave him "minute remedies" that did not work.  *Id*.  He also claims that he saw no real medical personnel for 90 days.  After two examinations by the nurse practitioner, it was determined that he had "swollen nerves" in his back that were causing pain.  When his complaint was filed, he was receiving medication for this twice a day, but the nerves still become inflamed causing pain and swelling.  He also claims that he occasional has shooting pain in his lower back and legs making it hard to walk.

Kimble asserts that on March 15, 2020, he filed a grievance complaint about the incident with Deputy Thompson.  *Id*.  He received a response on May 4, 2020, indicating that his complaint was "founded."  *Id*. at 20.  Kimble did not believe his complaint was fully investigated but his second grievance was returned to him because the first one was "founded."  *Id*.  Kimble claims that he also filed multiple grievance complaints about the medical care before he was finally seen by the nurse practitioner.  *Id*.  Once he was seen for his back pain, he decided the grievance complaints were no longer necessary.

Kimble further claims that Jefferson Parish has the obligation to provide CHJ with sufficient funding to ensure that inmates at JPCC are treated for their medical needs. ECF No. 106, at 3.

Kimble seeks declaratory judgment that his rights were violated and injunctive relief to prevent further violations. ECF No. 1, at 20. He also seeks $25,000 as compensatory damages and $150,000 as punitive damages for the PREA incident with Deputy Hayes. *Id*. He seeks $250,000 as compensatory damages and $150,000 as punitive damages for the deliberate indifference of Deputy Thompson. *Id*. For the delayed medical care, he seeks $150,000 as compensatory damages and $500,000 as punitive damages against CHJ and the two Jane Doe administrators. *Id*. at 21. In addition, he requests $250,000 as compensatory damages and $1 million as punitive damages against Jefferson Parish, Chief Monfra, and Sheriff Lopinto in connection with these claims. *Id*. at 20-21.

### 3. Claim Seven: Deliberate Indifference to His Protection (ECF No. 1, at 21-23; ECF No. 106, at 3)

Kimble alleges that defendants Jefferson Parish, the JPSO, Sheriff Lopinto, Chief Monfra, Sergeant C. Sibbernagel, and Major Edward Olsen have housed inmates of different classifications in the same unit which leads to conflict between inmates. ECF No. 1, at 21. He claims that inmates housed in administrative segregation are allowed out of their cells for one hour per day, while the general population inmates in the same unit are locked in their cells during that time. He alleges that the administrative segregation inmates are hostile and threaten the general population inmates, throw feces into the cells, and fight while out of their cells. *Id*. at 21-22. He claims that this puts general population inmates at risk of harm. *Id*. at 22. Kimble also alleges that some deputies, either accidentally or intentionally, allow segregation inmates out of their cells while general

population inmates are also out on the tier. *Id*. at 21. Kimble claims that he filed a grievance complaint on November 22, 2019, about this, and it was denied. *Id*. at 22.

He further alleges that, on August 20, 2020, he was attacked by an inmate who was allowed out of his administrative segregation cell. *Id*. As a result of the fight, Kimble claims that he suffered body aches and bruises for six days. Kimble acknowledges that he was seen immediately by medical personnel. He contends that the Jefferson Parish policy and/or custom of housing inmates of different classifications in the same area led to his injuries and shows deliberate disregard for inmate safety. *Id*. In addition, Kimble asserts that his grievance complaint about the attack was determined to be "founded." *Id*. at 22-23.

As relief, Kimble requests declaratory judgment as to the constitutional violations, injunctive relief, $10,000 in compensatory damages, and $150,000 in punitive damages. *Id*. at 23.

### 4. Claim Eight: Harassment and Discrimination against Homosexual Inmates (ECF No. 1, at 23-27; ECF No. 119, at 1)

Kimble sued defendants Jefferson Parish, Sgt. Anna Druhet, Captain B. Bordelon, Chief Monfra, and Sheriff Lopinto for discrimination against and harassment of homosexual inmates. *Id*. at 23-24. Specifically, he alleges that Sgt. Druhet is violating his due process rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments by harassing inmates on the homosexual tier. *Id*. at 24, 25. He claims that Sgt. Druhet conducts or has others conduct periodic searches of their cells looking for unauthorized extra mattresses or padding in mattresses. *Id*. at 24. He claims that these searches are only conducted on the homosexual tier. *Id*. He also claims that at least one search on November 10, 2020 was done after "lights out" on the homosexual tier. *Id*. He further alleges that Sgt. Druhet issues disciplinary violation reports to the homosexual inmates after these searches. *Id*. at 23-25. He refers to the repeated searches shows a "campaign of harassment" by

Sgt. Druhet against homosexuals.  *Id*. at 23, 25.  He filed grievance complaints about the searches that were denied because he had multiple claims and duplicate grievances.  *Id*. at 25.

Kimble also alleges that, after he filed the grievance complaints, Sgt. Druhet retaliated against him by waking him up to have his cell searched on January 14, 2021.  *Id*. at 26.  He claims that Sgt. Druhet's action was done in an attempt to stop him from continuing with the grievance complaints about the searches, a protected conduct under the First Amendment.  He believes that the grievance process itself leads to gossip among the prison staff and results in retaliation against the inmates before the grievances are reviewed.  He asserts that grievances should not go through the mail and should be turned in directly to the administration.  He filed a grievance about this harassment and the grievance procedure itself and it was denied as a "request."  *Id*. at 26.

Kimble further claims that, on June 6, 2021, Sgt. Anna Druhet was conducting a shakedown search in his housing unit.  ECF No. 119, at 1.  He claims that she saw three inmates, including him, who were out of their assigned bunks.  She directed the inmates to return to their assigned bunks.  Kimble claims that, as further harassment, she filed an inmate disciplinary action report against him and not the other inmates.  She also removed Kimble's mattress claiming the mattress was too thick.  She had the mattress sent to the warehouse for further examination.  He claims that the mattress was not extra thick, and she only took the mattress to punish him.  *Id*.

As relief, Kimble seeks declaratory judgment, injunctive relief, $10,000 as compensatory damages, and $100,000 as punitive damages.  ECF No. 1, at 26-27.

### 5. Claim Nine: Conditions of Confinement and Inadequate Medical Care (ECF No. 1, at 27-31; ECF No. 106, at 3; ECF No. 119, at 7-8)

Kimble also has sued defendants Jefferson Parish, Chief Monfra, Sheriff Lopinto, CHJ, Sergeant C. Buckelew, Lieutenant T. Berrian, Captain Bordelon, Parish Administrator/JPSO Specialist J. Denny, an administrator for CHJ, a doctor/physician for CHJ, Deputy Tropez, and

Deputy Vicky challenging the conditions of his confinement which allegedly led to injury for which did not receive adequate medical attention. Specifically, Kimble also asserts that Jefferson Parish has the obligation to provide CHJ with sufficient funding to ensure that inmates at JPCC are treated for their medical needs. ECF No. 106, at 3. He also claims that Jefferson Parish's use of high gloss floors in the jail facility coupled with the "no grip" shoes he was issued by the jail led to his slip and fall and demonstrates an intentional indifference to his safety.

a.     December 17, 2020 Incident (ECF No. 1, at 27-29)

Kimble claims that by December 17, 2020, a leaky toilet had been reported to maintenance and numerous deputies for four months. ECF No. 1, at 27. He alleges that the bathroom floor has a high-gloss paint with no texture and is slippery when wet. Kimble claims that, on December 17, 2020, he slipped and fell as a result of the wet floor caused by the leaking toilet. *Id.* He states that inmate McReynolds tried to help him and the inmate fell too. He claims that the fall caused that McReynolds to urinate on himself and on the already wet floor. *Id.*

Kimble alleges that, when deputies arrived, none of them or the CHJ staff would enter because of the wet floor. *Id.* at 28. He claims that Lt. Berrian kept saying that he and the other inmate were just playing around and were not hurt. The deputies told the inmates to crawl out of the bathroom area. McReynolds did, but Kimble claims he was in too much pain to move. *Id.* Lt. Berrian told the deputies to get a handcuff chain to pull Kimble out of the bathroom area. Kimble claims that he told them he was in too much pain to grab the chain. *Id.* Kimble finally decided to grab the chain and was pulled out, causing him more pain. Kimble claims that he and McReynolds were soaked with water and urine. *Id.*

Kimble was brought to infirmary by wheelchair and examined by the nurse practitioner. He claims that she ordered x-rays and that Kimble be kept in the infirmary overnight for

observation.  He did not get a shower for about five and one-half hours because he had to wait for a male deputy to escort him to the shower.  *Id*.

Kimble alleges that, on December 18, 2020, he was sent to University Medical Center for x-rays.  He was found to have injuries consistent with a slip and fall.  On his return, CHJ refused to follow the hospital's orders or give him prescribed medications.  *Id*.  He claims that he has since filled out multiple sick call requests and CHJ refuses to examine him.  He has filed multiple grievances.  *Id*. at 28-29.

    b.  December 19, 2020 Incident (ECF No. 1, at 29-30; ECF No. 119, at 8)

Kimble claims that on December 19, 2020, he and McReynolds were released from the infirmary and moved to the second floor temporary holding cell.  *Id*. at 29.  Deputy Young took McReynolds to the shower first, and Kimble was escorted to the shower when McReynolds returned.  *Id*.  Kimble claims that when he returned to the cell, the floor was wet from McReynolds shows and Kimble slipped.  Kimble claims that, as he fell, he grabbed McReynolds and pulled him down too.

Deputy Young called for Nurse Vicky who was already nearby.  She examined them and checked plaintiff for a concussion.  Nurse Vicky determined that the inmates needed icepacks and something for pain and inflammation.  Kimble claims she wrote this on a yellow tablet and said she would be back with the items, but she never returned.  *Id*. at 29.  Kimble claims he continued to request medical care but his requests were denied.  *Id*.

In addition, when Deputy Young reported the incident, Deputy Tropaz told him that Kimble and McReynolds were playing and did not fall.  *Id*. at 30.  Kimble claims that about 20 to 45 minutes later, he began to vomit.  He claims that Deputy Tropez was notified and she ignored the situation

Kimble claims that when he saw Nurse Vicky on December 20, 2020, he asked why she never brought the items. She responded that she forgot. *Id*. Kimble alleges that the facility and CHJ have taken no action to help him with his injuries and refuses to see him despite his numerous sick call requests.

Kimble also asserts that Deputies Young, Brown, and Washington acted in violation of his constitutional rights when they witnessed the fall and heard his requests for medical care, and deliberately denied him access to care multiple times. ECF No. 119, at 8. He claims that they should have contacted supervisors rather than listen to Deputy Tropaz. *Id*.

Kimble asserts that he has filed grievance complaints with the prison about this incident, and is still awaiting responses. ECF No. 1, at 30.

### c. Multiple Holding Cells

Kimble alleges that following these falls, between December 19 and 21, 2020, he was placed in different holding cells that were not designated to hold inmates long term. Despite his injuries and pain from the recent falls, he was given a mattress but had to sleep on the floor. He claims that this caused him more pain. He asserts that he filed grievances about this too, and is awaiting responses. *Id*.

### d. Relief

As a result of the falls and alleged lack of medical attention, Kimble seeks declaratory judgment, injunctive relief, $250,000 in compensatory damages, and $500,000 in punitive damages. *Id*. at 31; ECF No. 119, at 8. He also seeks $1 in nominal damages against Deputies Young, Brown, and Washington, jointly and severally. ECF No. 119, at 8.

### 6. Claim Ten: Inadequate Library at JPCC (ECF. No. 1, at 31-34; ECF No. 106, at 3))

Kimble asserts claims against defendants Jefferson Parish, the JPSO, Sheriff Lopinto, Chief Monfra, and the JPCC law library administrator asserting that defendants maintain a policy of denying access to an adequate law library at JPCC. ECF No. 1, at 31; ECF No. 106, at 3. He also complains that the law library personnel at JPCC will not assist him with any civil matters and instead advise him that the library is available to assist only with criminal matters. He claims that the failure to assist him caused him to miss the prescriptive period for filing a false arrest/false imprisonment claim against the arresting officers and agencies they represent. ECF No. 1, at 31-32. In an attempt to show that he would have had non-frivolous claims to pursue, he outlines events between April 15, 2016, and August 8, 2016, which he calls his "backward looking claims" that led to his arrests by JPSO officers and Baton Rouge officers for crimes he claims he did not commit. *Id*. at 32-34. Kimble asserts that these claims were non-frivolous and he would have been granted relief if he received adequate library assistance. He alleges that he has had a psychological burden and was denied his freedom for five years. *Id*. at 34.

As relief for the denial of library assistance, he seeks a declaratory judgment, injunctive relief, $5 million in compensatory damages, and $10 million in punitive damages. *Id*. at 34.

### B.     Jefferson Parish's Motion to Dismiss (ECF No. 96)

#### 1.  Jefferson Parish's Arguments in Support of Dismissal (ECF No. 42-1)

In its Motion to Dismiss, filed before the Court could complete its frivolousness review, Jefferson Parish seeks dismissal of Kimble's claims against it for failure to state a cause of action because it is not responsible for the operations of JPCC and cannot be held vicariously liable for the acts and/or omissions about which he complains. ECF No. 96, at 1; ECF No. 96-1, at 4-5. While Jefferson Parish includes discussion of Kimble's original claims one through four and part

of claim ten related to his arrests and incarceration, those claims as asserted against Jefferson Parish have already been dismissed in the Court's frivolousness review. ECF Nos. 115, 123, 124. The argument related to those claims is now moot, and there is no good cause for the court to revisit the statutory review. The motion should be denied as moot to the extent it addresses the previously dismissed claims in Kimble's claims one through four, and part of claim ten that are no longer before the Court.

With regard to the remaining five claims against Jefferson Parish outlined above, Jefferson Parish argues that it has limited responsibility for the operations of JPCC and Kimble's claims do not rise to the level of constitutional violations. ECF No. 96-1, ¶3(a), at 8. Jefferson Parish argues that the Sheriff, not the Parish, is responsible for the daily operations of JPCC. *Id*. Similarly, the health care provider, not the Parish, is responsible for medical care to the inmates under the medical indifference standards set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *Id*., ¶3(b), at 12-13. The Parish argues that Kimble has shown no link between it and CHJ or the Sheriff and cannot impute liability through the doctrine of *respondeat superior*, citing *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 649 (E.D. La. 2020). *Id*. at 13-14.

Jefferson Parish further argues that Kimble failed to allege that an official Parish policy was involved in his claims, except possibly regarding the leaky toilet and law library, which is a necessary component to establish its liability. *Id*. at 14. Instead, as recognized in *Belcher*, it is the Sheriff and CHJ that oversee the employees and supervise inmates at JPCC. *Id*. at 15. Jefferson Parish also argues that Kimble's claim related to the leaky toilet and law library may implicate the Parish without stating its basis for assuming so. *Id*., ¶4, at 16. Nevertheless, Jefferson Parish argues that Kimble failed to identify a parish employee or representative involved in either

incident, that he reported the leaking toilet to officials before the fall, or that the leaking toilet was an unconstitutional condition. *Id*., ¶4(a), (b), at 16, 18.

As for the law library issue, Jefferson Parish argues that Kimble has no right to "a well-provisioned law library." *Id*., ¶4(b), at 19. The Parish also argues that Kimble was seeking to challenge his prior arrests and was not challenging a sentence or condition of his confinement as envisioned by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 355-56 (1996) or *Bounds v. Smith*, 430 U.S. 817 (1977). *Id*.

Finally, Jefferson Parish asks this Court to reconsider the grant of pauper status on the assertion that Kimble is subject to the three-strikes rule under 28 U.S.C. § 1915(g) which prohibits him from proceeding as a pauper based on prior frivolousness dismissals. *Id*., ¶5, at 20-22.

### 2. Kimble's Memorandum in Opposition (ECF No. 108)

Kimble seeks denial of Jefferson Parish's motion. Citing *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978), Kimble asserts that Jefferson Parish should be held responsible for the actions of all other defendants because they are named in their official capacities and they represent Jefferson Parish. ECF No. 108, ¶I, at 1. He argues that Jefferson Parish contracted with CHJ to provide health care at JPCC. *Id*., ¶II, at 2. He claims they are adding to the risk to inmate health through inadequate funding of CHJ which prevents it from hiring physicians that can meet minimum standards of competence or diligence, provide adequate care, and handle the excessive case load. *Id*. at 2-3. This, he claims, breaches the Parish's duty under *Estelle* and *Belcher*, which was heavily relied on by Jefferson Parish in its motion. *Id*. at 3.

Kimble further argues that under *Belcher*, the Parish is responsible for the hazardously slippery floor that led to his fall. *Id*., ¶III, at 3. He claims that the use of the "high-gloss" floor

only in the housing unit exhibits the Parish's indifference to the safety of inmates who must where "no-grip" shoes provided by the jail. *Id.*

Kimble also argues that Jefferson Parish recognizes that it has an official policy to deny inmates access to the law library or from seeking help with civil matters in violation of *Bounds* and *Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993). *Id.*, ¶IV, at 4. He also avers that the books and legal documents provided in the library are not adequate and are out of date.

Finally, Kimble argues that he was not given prior notice that he was subject to the three-strikes rule or that his future pauper status would be revoked. *Id.*, ¶V, at 4.

### 3. Jefferson Parish's Reply to Kimble's Opposition Memorandum (ECF No. 111)

Jefferson Parish reasserts its arguments asserted in support of its motion. In addition, it argues that Kimble cannot rely on his claims against the Sheriff and CHJ, or their employees, to support claims against it. *Id.*, ¶1, at 2; *id.*, ¶2 at 4. Further, Jefferson Parish argues that Kimble's complaints of a slippery floor in the jail does not rise to the level of a constitutional violation. *Id.*, ¶3, at 5. Similarly, referencing the argument in its motion to dismiss, Kimble's claims and new assertions about the JPCC law library fail to state a claim because he has no right to a law library to bring his civil suit.

## II.    LEGAL STANDARDS

Jefferson Parish's motion to dismiss conflates the standards for the court's statutory frivolousness review under 28 U.S.C. § 1915(e)(2)(B) with the standard under FED. R. CIV. PROC. 12(b)(6). As the Supreme Court has made clear, § 1915's frivolous standard is distinct from Rule 12(b)(6)'s failure to state a claim standard.[6] The Court has emphasized that § 1915(e)(2)(B)'s

---

[6] *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("the failure to state a claim standard of Rule 12(b)(6) and the frivolousness standard of § 1915(d) were devised to serve distinctive goals, and . . . while the overlap between these two standards is considerable, it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter.")

standard for dismissal is higher than Rule 12 because the plaintiff may not have the opportunity to respond meaningfully by opposing a motion to dismiss.[7]  That said, a prisoner's complaint that fails to state a claim may be dismissed *sua sponte* at any time under either standard.[8]

### A.    Standard of Review under Rule 12(b)(6): Failure to State a Claim

The Supreme Court clarified the standard for a Rule 12(b) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[9]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[10]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[11]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[12]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are

---

[7] *Id.* at 329-30. ("To conflate the standards of frivolousness and failure to state a claim . . . would thus deny indigent plaintiffs the practical protections against unwarranted dismissal generally accorded paying plaintiffs under the Federal Rules."); *Alfred v. Corr. Corp. of Am.*, 437 F. App'x 281, 284 (5th Cir. 2011) ("That frivolousness in the § 1915(d) context refers to a more limited set of claims than does Rule 12(b)(6) accords, moreover, with the understanding articulated in other areas of law that not all unsuccessful claims are frivolous.") (citing *Neitzke*, 490 U.S. 328-30).

[8] 28 U.S.C. §§ 1915(e)(2) & 1915A; 42 U.S.C. § 1997e(c)(1).

[9] *Twombly*, 550 U.S. at 555.

[10] *Id.* at 557-58; *Iqbal*, 556 U.S. at 678.

[11] *Iqbal*, 556 U.S. at 678.

[12] *Ferrer v. Chevron Corp.*, 484 F. 3d 776, 780 (5th Cir. 2007) (quotation omitted); *Gentilello v. Rege*, 627 F. 3d 540, 544 (5th Cir. 2010) (same) (citations omitted); *see also SGK Props., L.L.C. v. U.S. Bank Natl. Assn. for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F. 3d 933, 944 –45 (5th Cir. 2018) (conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

central to the claim, and documents that are part of the public record or subject to judicial notice.[13]
When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the
allegation) controls.[14]

When a plaintiff's complaint fails to state a claim, the court should generally give the
plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with
prejudice, unless it is clear that to do so would be futile.[15]  A court in its discretion may deny a
motion to amend for futility if the amended complaint would fail to state a claim upon which relief
could be granted.[16]  The decision to grant or deny leave to amend "is entrusted to the sound
discretion of the district court."[17]

## III.    LAW AND ANALYSIS

### A.    Kimble is not subject to the Three Strikes Rule

Jefferson Parish suggests that the Court should have denied, or perhaps should now revoke,
Kimble's pauper status under the three-strikes rule under 28 U.S.C. § 1915(g) which provides as
follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action
> or proceeding under this section if the prisoner has, on 3 or more *prior* occasions,
> while incarcerated or detained in any facility, brought an *action or appeal* in a court
> of the United States that was dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be granted, unless the prisoner is
> under imminent danger of serious physical injury.

---

[13] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the
complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to
dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take
judicial notice."); *Wolcott v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (court may consider complaint, its proper
attachments, documents incorporated by reference, and matters of judicial notice).

[14] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F. 3d 370, 377 (5th Cir. 2004) (citation omitted).

[15] *See Carroll v. Fort James Corp.*, 470 F. 3d 1171, 1175 (5th Cir. 2006) (Rule 15a "evinces a bias in favor of
granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir.
2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing
a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable
to amend in a manner that will avoid dismissal.").

[16] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F. 3d 763, 766 (5th Cir. 2016).

[17] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F. 3d 214, 232 (5th Cir. 2012).

(emphasis added).

This court routinely considers the applicability of the three-strikes rule during initial review of any pauper application filed by a prisoner with a civil complaint or civil appeal. When this suit was presented for filing, Kimble's filing history was reviewed, and it was determined that he did not have three or more *prior actions or appeals* to constitute strikes as defined § 1915(g) and Fifth Circuit precedent.

Without doubt, two of Kimble's prior *actions* referenced by Jefferson Parish, Civ. Action 18-7918"S"(2) and Civ. Action 19-13078"A"(1), were dismissed by the respective divisions of this court as frivolous and/or failure to state a claim pursuant to the court's statutory frivolousness review under 28 U.S.C. § 1915(e), § 1915A and/or 42 U.S.C. § 1997e, as applicable.[18] These two cases count as strikes under § 1915(g). The fact that the latter case, Civ. Action 19-13078, remains on appeal[19] does not alter the fact that the dismissal by this district court counts as a strike.[20]

However, Kimble's other prior civil action, Civ. Action 14-625, also referenced by Jefferson Parish, does not count as a strike. In that case, the court dismissed only part of Kimble's action against two of the named defendants as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant.[21] The remaining part of the action (against Jefferson Parish itself) was voluntarily dismissed pursuant to FED. R. CIV. PROC. 41(a) on plaintiff's oral motion during a hearing before the Magistrate Judge.[22] The latter dismissal was not an enumerated ground for a strike under § 1915(g), *i.e.* it was not a dismissal as frivolous,

---

[18] Civ. Action 18-7918"S"(2), ECF Nos. 45, 54, 56, 57; Civ. Action 19-13078"A"(1), ECF Nos. 20, 25, 26.

[19] *See* Civ. Action 19-13078"A"(1), ECF Nos. 27, 28.

[20] *Coleman v. Tollefson*, 575 U.S. 532, 537 (2015)) ("A prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal."); *Sims v. Preston E. Smith Medical Dept.*, 854 F. App'x 603 (5th Cir. 2021) (recognizing that dismissal by a district court counts as a strike even if the appeal from that dismissal is currently pending) (citing *Coleman*, 575 U.S. at 534, 537).

[21] Civ. Action 14-625"J"(4), ECF Nos. 7, 9, 10.

[22] Civ. Action 14-625 "J"(4), ECF Nos. 7, 9, 10.

malicious, or for failure to state a claim.[23]  Dismissal of one or some claims for enumerated reasons, but not as to all claims, is not the same as dismissal of the *action* as required by § 1915(g).[24]  Thus, the entire *action* in Civ. Action 14-625 was not dismissed as frivolous, malicious, or for failure to state a claim, and the dismissal did not constitute a strike under § 1915(g).[25]

Under these standards, Kimble did not have three prior actions dismissed in accordance with § 1915(g) when he filed this *in forma pauperis* prisoner civil rights complaint.  He was not then subject to the three strikes rule.  Jefferson Parish has not demonstrated a basis for this court to reconsider the grant of pauper status on this ground.  The motion on this point should be denied.

### B.  Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[26]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[27]

A plaintiff must satisfy three elements to establish § 1983 liability:

---

[23] There also was no indication by the court in that case that Kimble was using the partial voluntary dismissal under Rule 41(a) to avoid a strike under § 1915(g).  *See Andrews v. Persley*, 669 F. App'x 529, 529-30 (11th Cir. 2016) (holding that Rule 41(a) voluntary dismissal is not a strike unless there is a clear showing that the dismissal was intended to circumvent the three-strikes rule); *Burley v. Unknown Defendants*, No. 15-143, 2015WL8212681, at *2 (S.D. Tex. Dec. 7, 2015) (finding that Rule 41(a) motion was an attempt to avoid dismissal as frivolous after report and recommendation was entered and denied the motion to consider the frivolousness review).

[24] *Brown v. Megg*, 857 F.3d 287, 291-92 (5th Cir. 2017) ("The statute speaks of 'actions,' not 'claims,' that were dismissed as frivolous, malicious, or for failure to state a claim.  The ordinary meaning of 'action' is the entire lawsuit.")

[25] *Id*. at 292.

[26] 42 U.S.C. § 1983.

[27] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[28]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[29] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[30] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[31]

### C.    Considerations for Parish Liability

#### 1.    No Liability for Actions of Sheriff's Employees, CHJ, or Medical Providers at JPCC (Claim Nos. Five through Ten)

Kimble seeks to hold Jefferson Parish responsible under § 1983 for the actions or inactions of the other defendants. However, "municipalities cannot be held liable for constitutional torts under § 1983 'on a respondeat superior theory[.]'"[32] That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'"[33] To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[34]

---

[28] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004).
[29] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).
[30] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[31] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).
[32] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999) (quoting *Monell*, 436 U.S. at 691.
[33] *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691)); *Burge*, 187 F.3d at 470 (quoting *Monell*, 436 U.S. at 691); *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell*, 436 U.S. at 694).
[34] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

As the Parish argues, Kimble has not alleged or identified any parish policy that caused him harm or that was being executed by the other defendants in providing him *vel non* with medical care, protection, or a more comfortable or equal prison life.  The Parish cannot be held vicariously liable without a showing that a specific parish policy caused plaintiff some constitutional harm. Kimble's arguments to the contrary are unfounded.  Jefferson Parish's motion should be granted to the extent Kimble seeks to assert Parish liability based on a policy or *Monell* theory, because the allegations fail to state a claim for which relief can be granted.

Furthermore, Jefferson Parish is not the principal over the medical department employees or the sheriff's office.  In Louisiana, the Parish government has no authority over the general management of the jail or its medical care provider.[35]  Instead, under Louisiana law, the Parish government is only responsible for the financing and physical maintenance of the jail building[36] and appointing or contracting with a health care provider to tend to the medical needs of the inmates.[37]  With regard to the medical care provider, the Parish government's "sole responsibility shall be . . . its contractual obligations with [the] health care provider," and not how the medical care is administered.[38]31

Kimble has not alleged a plausible claim against the Parish based on the implementation or execution of any parish policy in JPCC.  The Parish is not liable for the daily administration or management by JPCC or the sheriff's personnel at the jail or CHJ and its employees'

---

[35] *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998).

[36] *See* LA. STAT. ANN. § 15:304 ("All expenses incurred in the different parishes of the state or in the city of New Orleans by . . . confinement . . . of persons accused or convicted of crimes . . . shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."); LA. STAT. ANN. § 15:702 ("The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."); LA. STAT. ANN. § 33:4715 ("The police jury of each parish shall provide . . . a good and sufficient jail . . .").

[37] LA. STAT. ANN. § 15:703.

[38] LA. STAT. ANN. § 15:703(D); *accord Belcher*, 492 F. Supp. 3d at 649 (Under Louisiana law, a parish government is not policy maker for the prison and had no duty to monitor or verify the performance of medical services it contracted with for the jail).

administration or provision of medical care at JPCC.  Jefferson Parish's motion to dismiss should be granted as to Kimble's claims based on a theory of municipal liability.

### 2.  No Privacy Right Violated by Design of the Jail

Kimble alleges in Claim One that the design of the interior of his cell area violates his right to privacy because it allows for guards, including those of the opposite gender, to view inmates on the toilet and in the shower.  While Jefferson Parish is not responsible for assigning guards or choosing the gender of those guards within the prison, the claim is addressed in the context of the motion because Kimble invokes the building's design, a building for which the Parish is responsible, as violative of his privacy right.

The Supreme Court has declared that a prison inmate retains only those rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[39]  Consistent with this standard, courts have recognized that prisoners have a minimal right to bodily privacy.[40]  Nevertheless, even if a prison regulation impinges on that right, "the regulation is valid if it is reasonably related to legitimate penological interests."[41]

Here, Kimble arguably challenges the design of JPCC which allows for little privacy in the toilet and shower areas.  The lack of structures to provide privacy in a jail is not a constitutional violation.[42]  The federal courts have consistently recognized that "constant and comprehensive surveillance of the inmates is reasonably related to the penological interest of maintaining security because such surveillance increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults, and there is no readily identifiable alternative that would

---

[39] *Pell v. Procunier*, <u>417 U.S. 817, 822</u> (1974).

[40] *Oliver v. Scott*, <u>276 F.3d 736, 741</u> (5th Cir. 2002).

[41] *Turner v. Safley*, <u>482 U.S. 78, 89</u> (1987).

[42] *See Hmeid v. Nelson Coleman Corrl. Ctr.*, No. 18-3449, <u>2018WL4922381</u>, at *15 (E.D. La. Aug. 15, 2018) (the lack of privacy partitions in the shower and toilet areas of the jail, which allowed guards to see inmates using those facilities, did not violate inmates privacy expectations), *report and recommendation adopted by* <u>2018WL4909898</u>, at *1 (E.D. La. Oct. 10, 2018).

impose only de minimis expenses in terms of inmate security, staffing costs or equal employment opportunities."[43]

Kimble has not established that the design of JPCC is for any reason other than safety and security in the prison.  The lack of the absolute privacy Kimble desires through the design of the building, which allows guards to view inmates as they enter and exit the toilet and shower areas, is not itself a constitutional violation.  Without a constitutional violation, Kimble has not stated a claim for which relief can be granted, and Jefferson Parish's motion also should be granted as to this part of Claim Five.

### 3. No Constitutional Violation Resulting from Leaking Toilet or Floors (Claim Nine)

Beyond his claims challenging the medical care and safeguarding of inmates at JPCC, Kimble asserts that a leaky toilet and/or slippery floor at the jail contributed to his fall addressed in Claim Nine.  In its motion, Jefferson Parish apparently acknowledges its responsibility to maintain the plumbing or at least this leaking toilet and slippery floor.  However, as the Parish argues, Kimble has not alleged that a parish policy, practice, or custom caused the leak, his fall, or was in place to intentionally neglect the maintenance or safety at the jail.  Kimble also does not indicate that he placed the Parish on notice of any leak or dangerous condition at the jail to garner traction towards an intentional indifference claim.

To the extent Kimble claims that the leaking toilet or ill-chosen flooring demonstrated negligent maintenance practices by the Parish, his claim fairs no better.

> Ultimately, Plaintiff's slip-and-fall claim fails to state a constitutional claim.  The Fifth Circuit, and other courts, have frequently rejected constitutional claims arising from slip and fall accidents. *See Coleman v. Sweetin*, 745 F.3d 756, 764 & n.7 (5th Cir. 2014). "[T]he existence of slippery conditions in any populous environment represents at most ordinary negligence rather than a condition so threatening as to implicate constitutional standards."  *Id*. at 764.  As a matter of law, "slip-and-fall

---

[43] *Id*. (citing *Garrett v. Thaler*, 560 F. App'x 375, 380-81 (5th Cir. 2014).

claims almost never serve as the predicate for constitutional violations." *Id*. Slip and fall lawsuits present "garden-variety negligence claim[s] . . . not actionable under section 1983." *Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995). As the United States Supreme Court has explained: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Based on the foregoing, the Court finds Plaintiff's complaint should be dismissed for failure to state a claim.[44]

Thus, Kimble's allegations of negligence are not actionable under § 1983 because they are insufficient to establish a constitutional violation.[45] Relief under § 1983 requires a showing of intentional indifference that led to a constitutional violation, and claims of negligent repairs or seeking damages for his slip and fall simply do not state a claim under § 1983. Jefferson Parish's motion should be granted as to this claim.

### 4. Access to the Courts through Alleged Inadequate Legal Assistance or Library

Kimble alleges that he missed a civil prescriptive deadline because he was denied assistance at the JPCC law library. He also asserts in his subsequent pleadings that the library is inadequately stocked and has outdated legal aids and books. In its motion, Jefferson Parish seems to concede its legal garde over the law library and legal assistance provisions at JPCC. Assuming this to be the case, Kimble has at least alleged a plausible claim against Jefferson Parish for denial of access to the courts sufficient to survive this motion.

---

[44] *Evans v. Harrison Cty. Adult Det. Ctr.*, No. 18-87, 2020 WL 980149, at *2 (S.D. Miss. Feb. 28, 2020); *Atkins v. Sheriff's Jail, Avoyelles Parish*, 278 F. App'x 438, 439 (5th Cir. May 20, 2008) (prisoner's slip and fall did not include showing that prison officials disregarded any inference that there was a substantial risk of serious harm, and his claims amounted only to claims of unreasonableness or negligence, neither of which was actionable under the Eighth Amendment); *see also Andrews v. Belt*, 274 F. App'x 359 (5th Cir., Apr. 15, 2008) (assertion that prison officials may have known of a leaky toilet but failed to repair it alleges no more than negligence, which is not actionable under § 1983).

[45] *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (explaining that allegations of mere negligence do not implicate the Constitution and are not redressable under § 1983); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (emphasizing that allegations of negligence are simply insufficient to impose liability under § 1983).

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally-trained personnel.[46] This right extends to pretrial detainees.[47] However, the Supreme Court in *Bounds* did not establish that prisoners have a specific right to a law library.[48] The Court held that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for assuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"[49] In addition, "while the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has *not* extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."[50] The Court required only that prisons have some program through which the inmates were provided with the ability to file claims in court.[51]

The Supreme Court's decision in *Lewis* makes clear that *Bounds* did *not* open the door for a flood-gate of litigation assistance:

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

---

[46] *Bounds*, 430 U.S. at 828; *Dickinson v. TX, Fort Bend County*, 325 F. App'x 389, 390 (5th Cir. 2009); *Sandoval v. Johns*, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F. 3d 768-69 (5th Cir. 1996).

[47] *See United States v. Moya-Gomez*, 860 F.2d 706, 743 (7th Cir. 1988); *Wetzel v. Strain*, No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); *Kirkpatrick v. Daugherty*, No. 05-461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006).

[48] *See Lewis*, 518 U.S. at 350.

[49] *Id.* at 351 (quoting *Bounds*, 430 U.S. at 825); *Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011).

[50] *Vaccaro v. United States*, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); *accord Manning v. Sumlin*, 540 F. App'x 462, 463 (5th Cir. 2011) (citing *Lewis*, 518 U.S. at 349-50); *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Cochran v. Baldwin*, 196 F. App'x 256, 257-58 (5th Cir. 2006) (citing *Lewis*, 518 U.S. at 350-51); *Eason v. Thaler*, 73 F. 3d 1322, 1328 (5th Cir. 1996).

[51] *Lewis*, 518 U.S. at 352-53.

capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.[52]

The Court also did not mandate "that the State must enable the prisoner to discover grievances and to litigate effectively once in court."[53]  Instead, the Court required only some program through which the inmates were provided with the ability to file non-frivolous claims in court.[54]

Under established precedent, a prisoner's law library access rights are not without limits. For example, the right does not extend to those who are represented by counsel in a criminal proceeding.[55]  Further, in *Lewis*, the Supreme Court explained that the inmate must establish actual injury to state a claim for denial of his right of access to the courts.[56]  The "injury requirement is not satisfied by just any type of frustrated legal claim."[57]  Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under § 1983.[58]  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to courts.[59]  This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered.[60]  A plaintiff must describe the

---

[52] *Id.* at 355; *Jones*, 188 F.3d at 325 (observing that right of access to the court "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement"); *Johnson v. Rodriguez*, 110 F. 3d 299, 311 (5th Cir. 1997) (holding that secondary legal activity not protected by constitution).

[53] *Lewis*, 518 U.S. at 354.

[54] *Id.* at 351, 352-53.

[55] *Ashcraft v. Cameron County*, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); *accord Ford v. Foti*, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); *Childs v. Scott*, No. 94-60723, 1995 WL 153057, at *1 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); *Webb v. Havins*, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); *Crockett v. Carpenter*, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

[56] *Lewis*, 518 U.S. at 349-50.

[57] *Lewis*, 518 U.S. at 353.

[58] *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

[59] *Id.* at 349.

[60] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted).

claim well enough to establish that its "arguable nature . . . is more than hope."[61]  To show this type of actual-injury, the Court stated:

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.[62]

In this case, Kimble has alleged that denial of assistance and materials at JPCC prevented him from discovering the prescriptive period and caused him to miss his opportunity to file false arrest/false imprisonment claims against the identified arresting officers and agencies associated with his 2016 Jefferson and East Baton Rouge Parish arrests which underlie his current detention. He has provided the details of his proposed claims against these officers and entities ranging from incidents on April 15, 2016, through August 8, 2016.[63]

Jefferson Parish has not addressed, as discussed in *Lewis*, whether Kimble's proposed claims would have been non-frivolous or potentially successful had his access to courts not been stymied as alleged.  Instead, much as Kimble argues, Jefferson Parish seems to deny in its brief any legal responsibility for providing civil legal advice or materials to Kimble or any inmate unless the inmate is directly challenging a sentence or conditions of confinement.[64]  That is a very narrow reading of *Lewis* and its progeny.

The Parish is correct that the Supreme Court in *Lewis* did not intend to provide inmates "the wherewithal to transform themselves into litigating engines. . ."[65]  But the Court also made clear that the right *does* require that inmates be provided "[t]he tools . . . that the inmate needs in

---

[61] *Id.* at 416 (internal quotation marks omitted).
[62] *Lewis*, 518 U.S. at 351.
[63] ECF No. 1, at 32-34.
[64] ECF No. 96-1, ¶II(4)(b), at 20.
[65] *Lewis*, 518 U.S. at 355.

order to attack their sentences, *directly or collaterally*, and in order to challenge the conditions of their confinement."[66]  Claims of false arrest and false imprisonment are collateral attacks on an inmate's detention.[67]  While Kimble has not yet been convicted, the law is clear that Kimble's alleged false arrest/false imprisonment claims implicate the validity of his detention and any potential conviction.[68]  These claims are collateral attacks to his detention and potential conviction and not just any "civil/delictual claim" as Jefferson Parish suggests.[69]

Kimble alleges that, had he timely filed his false arrest and false imprisonment claims, he may have been successful.  At a minimum, his timely false arrest and false imprisonment claims, if filed in a federal court, would have been held in abeyance under *Heck* and *Wallace* pending a possible final conviction.[70]  Jefferson Parish has not briefed the matter of the potential viability or success of Kimble's false arrest and false imprisonment claims as necessary to address Kimble's alleged injury component under *Lewis*.  Nevertheless, considering the pleadings before this court, Kimble has at least alleged constitutional injury from the failure of Jefferson Parish to provide him access to the courts through legal assistance and/or adequate library access or materials.  While

---

[66] *Id*. (emphasis added).

[67] *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (applying *Heck* because "[the plaintiff's] proof to establish his false arrest claim, *i.e.*, that there was no probable cause to arrest [on his charges], would demonstrate the invalidity of [the plaintiff's conviction]."); *Robinson v. Lipps*, No. 18-1062, 2021WL865986, at *8 (W.D. La. Mar. 5, 2021) (barring under *Heck* false arrest and false imprisonment claims, *inter alia*, as collateral attacks on plaintiff's criminal conviction through a civil proceeding); *Russell v. McGee*, No. 19-39, 2020WL8611248, at *3 (same for false imprisonment claim).

[68] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated not to pending criminal charges but any such civil action should be stayed pending conclusion of the criminal process); *Thomas v. Pohlmann*, 681 F. App'x 401, 405 (5th Cir. 2017) ("Prevailing on the false-arrest claim-and establishing that the officer lacked probable cause to charge plaintiff with resisting arrest-could necessarily imply the invalidity of a conviction because the claim is essentially a collateral attack on a criminal judgment's validity."); *see also Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where the plaintiff was convicted of resisting arrest encounter, and his complaint proclaims his innocence throughout the entire arrest encounter, and not merely a discrete part of it, that the claims are barred by *Heck*) (quoting *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013)).

[69] ECF No. 96-1, ¶II(4)(b), at 20.

[70] *See Wallace*, 549 U.S. at 393-94; *Thomas*, 681 F. App'x at 405.

Kimble's claim is subject to further scrutiny, at this stage, he has plausibly asserted a claim sufficient to survive the Parish's motion to dismiss. The motion should be denied as to this claim.

### 5. Summary

Initially, Jefferson Parish's motion is moot to the extent it seeks dismissal of Kimble's Claim Nos. One through Four and part of Claim Ten, which have already been dismissed under the Court's frivolousness review. Jefferson Parish's motion should be denied in part on several other grounds. First, Kimble was not subject to the three strikes rule when he filed this *in forma pauperis* prisoner civil rights complaint. Second, Kimble has stated a plausible claim under § 1983 for denial of access to the courts claim asserted in Claim Ten. The Parish's motion, however, should be granted in part as to Kimble's Claim Nos. Five through Ten where he seeks to hold Jefferson Parish liable under *Monell* or any other theory of municipal liability, for his claims based on the prison's design that denies him privacy, for negligent plumbing repairs, or damages for his slip and fall as he fails to state claims for which relief can be granted on these claims under § 1983.

### RECOMMENDATION

It is therefore **RECOMMENDED** that Parish of Jefferson's Motion to Dismiss (ECF No. 96) be **DENIED in part** as moot because Kimble's Claim Nos. One through Four and part of Claim Ten as asserted against Parish of Jefferson have already been dismissed with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted as part of the court's frivolousness review.

It is further **RECOMMENDED** that Parish of Jefferson's Motion to Dismiss (ECF No. 96) be **DENIED in part** to the extent it seeks to have Kimble's pauper status revoked because he was not subject to the three-strikes rule under 28 U.S.C. § 1915(g) when pauper status was granted.

It is further **RECOMMENDED** that Parish of Jefferson's Motion to Dismiss (ECF No. 96) be **DENIED in part** as it relates to Kimble's denial of access to the courts asserted in Claim Ten.

It is further **RECOMMENDED** that Parish of Jefferson's Motion to Dismiss (ECF No. 96) be **GRANTED in part** as to Kimble's Claim Nos. Five through Ten where he seeks to hold Parish of Jefferson liable based *Monell* or other theory of municipal liability, for a prison design that denies him privacy, and for negligent repairs or damages for his slip and fall because Kimble thereby fails to state a claim for which relief can be granted under § 1983 and those claims be **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that Kimble's remaining claims against Parish of Jefferson and the other remaining defendants remain referred to the undersigned Magistrate Judge for further proceedings consistent with the automatic referral under Local Rule 73.2(A).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[71]

New Orleans, Louisiana, this __31st__ day of May, 2022.



DONNA PHILLIS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[71]*Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).