UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND HAROLD KIMBLE, III | CIVIL ACTION |
| VERSUS | NO. 21-409 |
| PARISH OF JEFFERSON, ET AL. | SECTION "A" (2) |

**REPORT AND RECOMMENDATION**

Defendant Joseph Denny, Jefferson Parish Administrative Management Specialist IV, filed a Motion to Dismiss seeking dismissal of plaintiff Raymond Harold Kimble, III's 42 U.S.C. § 1983 complaint pursuant to FED. R. CIV. PROC. 12(b)(6) and 28 U.S.C. § 1915(e)(2), 42 U.S.C. § 1997e(2)(b).[1]  Kimble has not filed an opposition to the motion.  The motion was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  Upon review of the record, the court has determined that the motion can be disposed of without an evidentiary hearing.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Kimble was a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") when he filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983.[2]  Kimble asserted claims against numerous defendants, including Denny, alleging various constitutional violations arising from his arrest and incarceration in Jefferson Parish Correctional Center ("JPCC").  A great number of defendants and most of Kimble's claims have been dismissed in the

---

[1] ECF No. 234.
[2] ECF No. 1, at 2.  Kimble is currently housed in the Dixon Correctional Institute in Jackson, Louisiana.  ECF No. 160.

Court's frivolousness review and rulings on other defendants' dispositive motions.[3] This Report addresses the motion to dismiss filed by defendant Denny.

Kimble listed Denny, originally named as "J. Denny,"[4] as one of the many defendants[5] in connection with his ninth claim challenging the conditions of his confinement at JPCC which led to a slip and fall incident for which he allegedly received inadequate medical care for a leg injury.[6] Kimble sued Denny in his individual and official capacity as an administrative official for Jefferson Parish.[7] Kimble's specific claims arise from the following alleged incidents within JPCC.

### A. Claims of Liability Relevant to Denny (Claim IX)

In Claim IX of his complaint, as later amended, Kimble asserts that Jefferson Parish, for whom Denny works, had the obligation to provide the medical care provider, CHJ, with sufficient funding to ensure that inmates at JPCC were treated for their medical needs.[8] He also claims that leaky toilets, Jefferson Parish's use of high gloss floors in the jail facility, coupled with the "no grip" shoes he was issued by the jail, led to his slip and fall and demonstrated an intentional indifference to his safety.[9] He further asserts the following specific events and claims arising during his incarceration in JPCC.

#### 1. December 17, 2020 Incident (ECF No. 1, at 27-29)

Kimble claims that by December 17, 2020, a leaky toilet had been reported to maintenance

---

[3] ECF Nos. 115, 123, 124, 185, 207.
[4] ECF No. 1, at 5.
[5] Claim IX was also asserted against Jefferson Parish, Deputy Chief Sue Ellen Monfra, Jefferson Parish Sheriff Joseph P. Lopinto, III, Correct Health Jefferson, LLC ("CHJ"), Sergeant Charles Buckelew, Lieutenant Timothy Berrian, Captain B. Bordelon, unidentified administrator and doctor for CHJ, Deputy Ashtantion Tropez, Nurse Victoria Parria, Deputy Shannon Young, Deputy G. Brown, and Deputy Rhonda Washington.
[6] ECF No. 1, at 27-31; ECF No. 106, at 2-3 ("Claim VI and IX"); ECF No. 119, at 7-8.
[7] ECF No. 1, at 6; ECF No. 106, at 1 ("All Complaints").
[8] ECF No. 106, at 3.
[9] *Id.* ("Claim IX").

and numerous deputies for four months.[10] He alleges that the bathroom floor has a high-gloss paint with no texture and is slippery when wet. Kimble claims that, on December 17, 2020, he slipped and fell as a result of the wet floor caused by the leaking toilet.[11] He states that inmate McReynolds tried to help him and the inmate fell too. He claims that the fall caused that McReynolds to urinate on himself and on the already wet floor.[12]

Kimble alleges that, when deputies arrived, none of them or the CHJ staff would enter because of the wet floor.[13] He claims that Lt. Berrian kept saying that he and the other inmate were just playing around and were not hurt. The deputies told the inmates to crawl out of the bathroom area. McReynolds did, but Kimble claims he was in too much pain to move.[14] Lt. Berrian told the deputies to get a handcuff chain to pull Kimble out of the bathroom area. Kimble claims that he told them he was in too much pain to grab the chain.[15] Kimble finally decided to grab the chain and was pulled out, causing him more pain. Kimble claims that he and McReynolds were soaked with water and urine.[16]

Kimble was brought to infirmary by wheelchair and examined by the nurse practitioner. He claims that she ordered x-rays and that Kimble be kept in the infirmary overnight for observation. He did not get a shower for about five and one-half hours because he had to wait for a male deputy to escort him to the shower.[17]

Kimble alleges that, on December 18, 2020, he was sent to University Medical Center for x-rays. He was found to have injuries consistent with a slip and fall. On his return, CHJ refused

---

[10] ECF No. 1, at 27.
[11] *Id*.
[12] *Id*.
[13] *Id*. at 28.
[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] *Id*.

to follow the hospital's orders or give him prescribed medications.[18] He claims that he has since filled out multiple sick call requests and CHJ refuses to examine him. He has filed multiple grievances.[19]

### 2. December 19, 2020 Incident (ECF No. 1, at 29-30; ECF No. 119, at 8)

Kimble claims that on December 19, 2020, he and McReynolds were released from the infirmary and moved to the second floor temporary holding cell.[20] Deputy Young took McReynolds to the shower first, and Kimble was escorted to the shower when McReynolds returned.[21] Kimble claims that when he returned to the cell, the floor was wet from McReynolds' shower and Kimble slipped. Kimble claims that, as he fell, he grabbed McReynolds and pulled him down too.

Deputy Young called for Nurse Vicky who was already nearby. She examined them and checked plaintiff for a concussion. Nurse Vicky determined that the inmates needed icepacks and something for pain and inflammation. Kimble claims she wrote this on a yellow tablet and said she would be back with the items, but she never returned.[22] Kimble claims he continued to request medical care but his requests were denied.[23]

In addition, when Deputy Young reported the incident, Deputy Tropaz told him that Kimble and McReynolds were playing and did not fall.[24] Kimble claims that about 20 to 45 minutes later, he began to vomit. He claims that Deputy Tropez was notified and she ignored the situation.

---

[18] *Id*.
[19] *Id*. at 28-29.
[20] *Id*. at 29.
[21] *Id*.
[22] *Id*.
[23] *Id*.
[24] *Id*. at 30.

Kimble claims that when he saw Nurse Vicky on December 20, 2020, he asked why she never brought the items. She responded that she forgot.[25] Kimble alleges that the facility and CHJ have taken no action to help him with his injuries and refuses to see him despite his numerous sick call requests.

Kimble also asserts that Deputies Young, Brown, and Washington acted in violation of his constitutional rights when they witnessed the fall and heard his requests for medical care, and deliberately denied him access to care multiple times.[26] He claims that they should have contacted supervisors rather than listen to Deputy Tropaz.[27]

Kimble asserts that he has filed grievance complaints with the prison about this incident, and is still awaiting responses.[28]

### 3. Moved to Multiple Holding Cells (ECF No. 1, at 30)

Kimble alleges that after these falls, between December 19 and 21, 2020, he was placed in different holding cells that were not designated to hold inmates long-term. Despite his injuries and pain from the recent falls, he was given a mattress but had to sleep on the floor. He claims that this caused him more pain. He asserts that he filed grievances about this too, and is awaiting responses.[29]

### 4. Relief Sought

As a result of the falls and alleged lack of medical attention, Kimble seeks declaratory judgment, injunctive relief, $250,000 in compensatory damages, and $500,000 in punitive

---

[25] *Id*.
[26] ECF No. 119, at 8.
[27] *Id*.
[28] ECF No. 1, at 30.
[29] *Id*.

damages.[30] He also seeks $1 in nominal damages against Deputies Young, Brown, and Washington, jointly and severally.[31]

### B. Denny's Motion to Dismiss (ECF No. 234)

Denny urges this motion to dismiss in his official capacity as Administrative Management Specialist IV for the Parish of Jefferson seeking dismissal of Kimble's claims against him in his official capacity as frivolous and for failure to state a claim for which relief can be granted.[32] Denny argues that Kimble should not be allowed to substitute him as respondent for claims already brought against and dismissed as to Jefferson Parish, his employer, which is not responsible for the operations at JPCC or vicariously liable for the acts or omissions of co-defendants.[33] Denny argues that to do so would allow duplicitous litigation.

In addition, Denny argues that Kimble has failed to state a cause of action against him under Claim X, a claim still pending against Jefferson Parish, because Kimble sustained no compensable injury as a result of his alleged wrongful arrest in August of 2016, and any such claim had prescribed by the time of his rearrest.[34] As a result, he can establish no basis for his claim against Jefferson Parish, or Denny in an official capacity, that the law library at JPCC was inadequate under either *Bounds v. Smith*, 430 U.S. 817 (1977) or *Lewis v. Casey*, 518 U.S. 343 (1996).[35] Further, Kimble has not alleged that Denny was personally involved in the adequacy of the law library at JPCC.[36]

---

[30] *Id*. at 31; ECF No. 119, at 8.
[31] ECF No. 119, at 8.
[32] ECF No. 234, at 1; ECF No. 234-1, at 1; *id*., ¶III, at 11.
[33] ECF No. 234, at 1-2; ECF No. 234-1, ¶I, at 2; *id*., ¶II(2), at 7-8.
[34] *Id*., ¶II(3), at 9-10.
[35] *Id*. at 10.
[36] *Id*. at 11.

In conclusion, Denny argues that, as a Jefferson Parish employee sued in his official capacity, the dismissal of claims against Jefferson Parish should inure to his benefit.[37] Specifically, Claim X as it remains against Jefferson Parish is not "actionable" because Kimble's arrests were not wrongful. Kimble, therefore, had no basis to pursue an "inadequate library" claim against Jefferson Parish, or Denny in his official capacity, because the arrests were not "actionable."[38]

## II. LEGAL STANDARDS

Denny's motion to dismiss conflates the standards for the court's statutory frivolousness review under 28 U.S.C. § 1915(e)(2)(B), which was completed long ago, with the standard under FED. R. CIV. PROC. 12(b)(6). As the Supreme Court has made clear, § 1915's frivolous standard is distinct from Rule 12(b)(6)'s failure to state a claim standard.[39] The Court has emphasized that § 1915(e)(2)(B)'s standard for dismissal is higher than Rule 12 because the plaintiff may not have the opportunity to respond meaningfully by opposing a motion to dismiss.[40] That said, a prisoner's complaint that fails to state a claim may be dismissed *sua sponte* at any time under either standard.[41]

---

[37] *Id.*, ¶III, at 11.
[38] *Id*.
[39] *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("the failure to state a claim standard of Rule 12(b)(6) and the frivolousness standard of § 1915(d) were devised to serve distinctive goals, and . . . while the overlap between these two standards is considerable, it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter.")
[40] *Id.* at 329-30. ("To conflate the standards of frivolousness and failure to state a claim . . . would thus deny indigent plaintiffs the practical protections against unwarranted dismissal generally accorded paying plaintiffs under the Federal Rules."); *Alfred v. Corr. Corp. of Am.*, 437 F. App'x 281, 284 (5th Cir. 2011) ("That frivolousness in the § 1915(d) context refers to a more limited set of claims than does Rule 12(b)(6) accords, moreover, with the understanding articulated in other areas of law that not all unsuccessful claims are frivolous.") (citing *Neitzke*, 490 U.S. 328-30).
[41] 28 U.S.C. §§ 1915(e)(2) & 1915A; 42 U.S.C. § 1997e(c)(1).

### A.    <u>Standard of Review under Rule 12(b)(6): Failure to State a Claim</u>

The Supreme Court clarified the standard for a Rule 12(b) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[42] It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[43] If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[44]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[45] The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[46] When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[47]

---

[42] *Twombly*, 550 U.S. at 555.
[43] *Id*. at 557-58; *Iqbal*, 556 U.S. at 678.
[44] *Iqbal*, 556 U.S. at 678.
[45] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quotation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same) (citations omitted); *see also SGK Props., L.L.C. v. U.S. Bank Natl. Assn. for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018) (conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).
[46] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (court may consider complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).
[47] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[48] A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[49] The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[50]

### III. LAW AND ANALYSIS

#### A. Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[51]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[52]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[53]

---

[48] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").
[49] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).
[50] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).
[51] 42 U.S.C. § 1983.
[52] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[53] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[54] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[55] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[56]

### B. Claim against Denny in his Official Capacity

Kimble named defendant "J. Denny," a "Parish Administrative Specialist," in Claim IX of his original complaint in <u>both</u> his individual and official capacities.[57] That defendant was later better identified for the court as Joseph Denny, movant herein, an Administrative Management Specialist IV in the Jefferson Parish Department of Community Justice Agency.[58] As outlined above, in Claim IX, Kimble alleged that Jefferson Parish used slippery floors in designing or building JPCC, making it unsafe, and an inadequately funded the medical care provider, which resulted in inadequate medical care for his injuries.

Denny was named his official capacity as an employee of Jefferson Parish. A claim against a public official in an official capacity is treated as a claim against the municipal entity the official represents.[59] Thus, when a plaintiff sues both a governmental officer in his official capacity and a governmental entity for an identical claim, the claim against the officer is "subsumed within [the

---

[54] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[55] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[56] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).
[57] ECF No. 1, at 5.
[58] ECF No. 220, at 1.
[59] *Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir. 1996); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

plaintiff's] identical claim against [the government entity]."[60] Therefore, when a § 1983 plaintiff sues both the local governmental entity and the entity's agent in an official-capacity, the official-capacity claim is duplicative and subject to dismissal on that basis.[61]

The court has already resolved Claim IX in favor of Jefferson Parish, Denny's employer. On May 31, 2022, I issued a Report and Recommendation addressing defendant Jefferson Parish's Motion to Dismiss (ECF No. 96).[62] In that report, I recommended dismissal of Kimble's Claim IX[63] against Jefferson Parish because he failed to state a § 1983 claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), or any other theory of vicarious or municipal liability, for the alleged negligent prison design that denied him privacy and any negligent repairs that allegedly caused his falls.[64] On August 1, 2022, the District Judge adopted this and the other recommendations made in the report and dismissed with prejudice Kimble's claims against Jefferson Parish, with the exception of the inadequate library claim in Claim X.[65]

For these reasons, Kimble's § 1983 claim (Claim IX) asserted against Denny in his official capacity is duplicative of the same claim urged against Jefferson Parish, the entity he represents. In addition, the claims against Jefferson Parish in Claim IX of Kimble's complaint have already been dismissed with prejudice for failure to state a claim for which relief can be granted. Thus,

---

[60] *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009); *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (official capacity suit is suit against the entity the official represents and success on claim "imposes liability on the entity" the officer represents) (citations omitted)).
[61] *See, e.g., Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Wilkerson v. Parish of Jefferson*, No. 20-3031, 2021 WL 2436355, at *5 (E.D. La. June 14, 2021).
[62] ECF No. 170.
[63] The motion was denied to the extent it sought dismissal of Claims I through IV because those claims had already been dismissed in the court's frivolousness review, along with part of Claim X. ECF No. The inadequate library claim within Claim X remains pending against Jefferson Parish and other defendants.
[64] *Id*. at 20-24 (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999) (quoting *Monell*, 436 U.S. at 691) (other citations omitted).
[65] ECF No. 206, 207.

Kimble's claims against Denny in his official capacity[66] asserted in Claim IX[67] of his complaint also must be dismissed with prejudice as duplicative and otherwise for failure to state a claim for which relief can be granted based on the same reasons previously adopted with respect to his employer, Jefferson Parish.

## RECOMMENDATION

It is therefore **RECOMMENDED** that Joseph Denny's Motion to Dismiss (ECF No. 234) be **GRANTED**, and Kimble's § 1983 claims against Denny, in his official capacity, be **DISMISSED WITH PREJUDICE** as duplicative and for failure to state a claim for which relief can be granted under § 1983.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[68]

New Orleans, Louisiana, this __8th__ day of February, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[66] Denny has not sought dismissal in his individual capacity.
[67] Although Denny's motion asserts much ado about the remaining portion of Claim X against Jefferson Parish (inadequate law library at JPCC), Denny was not named in Claim X of Kimble's complaint or any claim other than Claim IX. Furthermore, the inadequate library portion of Claim X has been found to state a plausible claim for relief against Jefferson Parish sufficient to survive dismissal under FED. R. CIV. P. 12(b)(6). ECF Nos. 206, 207.
[68] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).